WHITE, APPELLANT, *v.* COLUMBUS BOARD OF EDUCATION, APPELLEE.

(No. 82AP-57—Decided July 15, 1982.)

*Green, Schiavoni, Murphy, Haines & Sgambati Co., L.P.A., Mr. Frederic A. Portman* and *Ms. Susanne R. Blatt,* for appellant.

*Mr. Lawrence H. Braun, Messrs. Bricker & Eckler, Mr. Jerry E. Nathan* and *Ms. Rebecca Princehorn,* for appellee.

BROGAN, J. From September 1963 through January 1969, Janet White, appellant herein, certified by the state of Ohio to teach kindergarten through eighth grade, taught first grade in the Columbus Public School District pursuant to a series of contracts with the Columbus Board of Education, appellee herein.

At all times relevant to this case, teachers in the Columbus district were paid in accordance with a schedule which corresponded directly with the type of college degree and the number of years of experience each teacher possessed. To receive credit for one-year's experience, a full-time teacher had to teach for one hundred twenty days during a school year.

During the course of the 1968-69 school year, appellant became pregnant, and, on January 29, 1969, pursuant to a board of education policy requiring pregnant women to take a leave of absence no later than ninety days before the expected

delivery date, appellant took a leave of absence. She was physically and mentally capable of continuing to teach for at least one hundred twenty days during that year.

Appellant resumed employment with appellee for the 1975-76 school year as a half-time kindergarten teacher. Appellant entered into a one-year written contract with appellee which set forth a salary commensurate with the sixth-step Master's Degree designation on the salary schedule, adjusted to fifty percent based upon appellant's half-time status. In view of the requirement that half-time teachers teach two years to advance one step on the salary schedule, appellant entered into a similar contract with appellee for the 1976-77 school year, as well as for the 1977-78 school year.

Shortly after signing her contract for the 1978-79 school year, appellant was informed that the year in which she took maternity leave should not have been counted as a year of experience in that she failed to teach for one hundred twenty days that year. Appellee further advised appellant that, for the 1975-76 and 1976-77 school years, she should have been at the fifth-step Master's Degree level of the salary schedule. Consequently, repayment of $383 would have to be made through adjustments to appellant's salary checks during the 1978-79 and 1979-80 school years.

In a letter dated February 2, 1979 appellee outlined a repayment schedule, explained the impact upon appellant's net pay, and requested that she sign and return a copy of the letter, thereby acknowledging her agreement to permit the designated adjustments. Appellant complied with appellee's requests and the necessary adjustments were accomplished.

On July 2, 1980, appellant filed a complaint in the Court of Common Pleas of Franklin County for mandamus, seeking declaratory and injunctive relief against appellee. Appellant contended that the deductions by appellee from her salary violated R.C. 2715.01, 3319.08 and 4113.15. Appellant also maintained that the maternity policy violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, as well as Section 1983, Title 42, U.S. Code.

The parties submitted the cause to the court on stipulations of fact and briefs of counsel. In a decision filed December 9, 1981, the trial court denied appellant's request for relief.

Appellant timely filed a notice of appeal and has set forth four assignments of error. The first assignment of error is as follows:

"1. The trial court erred in holding that plaintiff waived any reservation of rights under her employment contract with defendant when she agreed in writing to a reduction in salary."

Initially, appellant insisted that appellee's request for reimbursement of the alleged overpayment had no basis in law in that payments, made in good faith under color of the law and subsequently found to have been erroneous, ordinarily cannot be recovered. *State, ex rel. Parsons,* v. *Ferguson* (1976), 46 Ohio St. 2d 389, 392 [75 O.O.2d 456]; *State, ex rel. Gillie,* v. *Warren* (1973), 36 Ohio St. 2d 89, 93 [65 O.O.2d 241].

Appellant also argues that her acquiescence in the repayment plan did not constitute a waiver of her rights in that her consent was not intended as a concession of appellee's entitlement to the alleged overpayment but, reflected the selection of the least financially burdensome alternative. In addition, appellee failed to apprise appellant of her rights when obtaining her consent to the adjustments to her salary. Further, having legal counsel on its staff, and being appellant's employer, placed appellee in a more advantageous position to demand a refund. Coupled with the fact that appellant, lacking counsel, did not have full knowledge of her rights, assertedly, she

could not be considered to have intentionally and voluntarily relinquished known rights.

Next, appellant maintains that procedures may not be instituted to recover alleged overpayments except as provided in R.C. 117.10 and 2715.01. Deducting money from appellant's salary, without first acquiring certification of a wrongful expenditure, is a violation of R.C. 117.10. Further, resort to self-help prior to filing a suit and obtaining a judgment constituted an attachment in aid of execution and/or garnishment without a judgment in violation of R.C. 2715.01.

Finally, appellant claims that paying her less than that specified in her contract constituted a violation of R.C. 3319.08 which prohibits the diminishing of salaries during the term of the contract.

Regarding the rule of nonrecovery of payments made lawfully and in good faith, such prohibition is directed toward unilateral action by the official attempting to secure the return of the payments. Clearly, however repayment preceded by the consent of the person from whom the funds are sought does not establish unilateral action and this rule would have no applicability in such case.

On the issue of consent, having thoroughly examined the record, we consider appellant's position to lack sufficient factual support to negate the validity of the agreement entered into by the parties. Thus, this cause is distinguishable from the ordinary case involving unilateral action in which the rationale of *Ferguson, supra,* and *Warren, supra,* would control.

Concerning procedures for recovering alleged overpayments, R.C. 117.01 creates the Bureau of Inspection and Supervision of Public Offices, and authorizes the bureau to examine the accounts and reports of all public offices, including school districts. Upon examination, the bureau is required to make a report and file a certified copy thereof with all necessary parties as designated in R.C. 117.10. Where such report sets

forth, *inter alia,* that public money has been illegally expended, the appropriate official is required to institute, within ninety days of receipt of the report, a civil action for recovery of the money expended. R.C. 117.10.

R.C. 117.10 further mandates that:

"No claim for money or property found to be due to any public treasury or custodian thereof in any such report shall be abated or compromised, either before or after the filing of civil actions, by any board or officer or by order of any court unless the attorney general first gives his written approval."

In this case there is no indication that appellee's actions were based upon a report of the bureau of inspection. Nothing in R.C. Chapter 117 prohibits appellee from attempting to secure the return of funds appellee itself found to have been illegally expended.

Further, upon issuance of a report by the bureau, recovery of funds determined therein to have been illegally expended ordinarily should be left to the appropriate official as designated in R.C. 117.10. However, this provision does not prohibit self-help by the pertinent board or officer, but simply requires prior approval of the Attorney General in situations involving abatement or compromise of the relevant funds.

Turning to the issue of attachment, R.C. 2715.01 provides in pertinent part as follows:

"An attachment against the personal earnings of a defendant, through an action in garnishment, may be granted *after* a judgment has been obtained by the plaintiff." (Emphasis added.)

The present case does not involve an attachment of personal earnings prior to the conclusion of a civil action, but an agreement by appellant to permit the recovery of funds through adjustments to her salary. R.C. 2715.01 is of no import under the circumstances of this case.

Next, we consider the asserted violation of R.C. 3319.08, which requires

boards of education to enter into written contracts for the employment and reemployment of all teachers. This provision also mandates that these contracts:

"* * * [S]hall set forth the teacher's duties and shall specify the salaries and compensation to be paid * * * either or both of which may be increased but not diminished during the term for which the contract is made, except as provided in section 3319.12 of the Revised Code."

R.C. 3319.12 provides in part as follows:

"Each board of education shall cause notice to be given annually not later than the first day of July to each teacher who holds a contract valid for the succeeding school year, as to the salary to be paid such teacher during such year. Such salary shall not be lower than the salary paid during the preceding school year unless such reduction is part of a uniform plan affecting the entire district. * * *

"* * * [T]he salaries and compensations prescribed by such contracts shall not be reduced by a board of education unless such reduction is a part of a uniform plan affecting the entire district. * * *"

Assuming the adjustments to appellant's salary to recoup the asserted overpayment in previous school years constituted a diminishing of the salaries for the years in which the adjustments were made, R.C. 3319.08 would preclude unilateral action by appellee in implementing such adjustments. However, in view of the fact that appellant agreed to the adjustment, she must be held to have waived her right to assert a violation of R.C. 3319.08. See *State, ex rel. Brubaker,* v. *Hardy* (1966), 5 Ohio St. 2d 103 [34 O.O.2d 225]; *State, ex rel. Ford,* v. *Bd. of Edn.* (1943), 141 Ohio St. 124 [25 O.O. 241].

Appellant's first assignment of error is denied.

In view of the interdependence of the arguments contained in appellant's second, third and fourth assignments of error, these assignments will be discussed together. Appellant submits that:

"2. The trial court erred in holding that plaintiff suffered no continuing violation of her rights under the United States Constitution or 42 U.S.C. Section 1983 as a result of defendant's continuing refusal to credit her with one full year of teaching for the year in which she was forced to take pregnancy leave prior to 120 days of service.

"3. The trial court erred in holding that plaintiff's claim is time-barred under Ohio Revised Code Section 2305.14.

"4. The trial court erred in finding that defendant's salary schedule, requiring a minimum of 120 teaching days per year in order to advance one step on the salary scale, had equal impact upon male and female teachers."

Appellant notes that, during the period in which she was not employed by appellee, mandatory pregnancy leave policies such as that pertinent to this case were declared unconstitutional. *Cleveland Bd. of Edn.* v. *LaFleur* (1974), 414 U.S. 632. Thus, appellant asserts that appellee's refusal to credit her with one year's experience for the 1968-69 school year, for failing to teach for one hundred twenty days during that year, indirectly revived the discriminatory maternity leave policy in violation of Section 1983, Title 42, U.S. Code, and the Fourteenth Amendment to the United States Constitution.

It appears clear that the decision to deny appellant credit for one year's experience for the 1968-69 school year rested solely upon the "one hundred twenty day" policy. This policy is not in itself discriminatory. The fact that such policy gave effect to a past act of discrimination is of no legal significance. *United Air Lines, Inc.* v. *Evans* (1977), 431 U.S. 553. See *Farris* v. *Bd. of Edn. of St. Louis* (C.A. 8, 1978), 576 F.2d 765; *Freude* v. *Bell Tel. Co.* (E.D. Pa. 1977), 438 F. Supp. 1059; *Rodgers* v. *Berger* (D. Mass. 1977), 438 F. Supp. 713; see, also,

*Roberts* v. *North American Rockwell Corp.* (C.A. 6, 1981), 650 F.2d 823; compare *Nashville Gas Co.* v. *Satty* (1977), 434 U.S. 136. There being no present violation of Section 1983, Title 42, U.S. Code, or of the Fourteenth Amendment, we must affirm the trial court's decision in this matter.

In *Evans, supra,* United Air Lines, Inc. maintained a policy of refusing to allow female flight attendants to be married. One such attendant, Carolyn Evans, was forced to resign when she married in 1968. Subsequently, in *Sprogis* v. *United Air Lines, Inc.* (C.A. 7, 1971), 444 F.2d 1194, certiorari denied, 404 U.S. 991, resignation under such a policy was found to be violative of Title VII of the Civil Rights Act. Ms. Evans had not initiated any proceedings by filing a charge with the Equal Employment Opportunity Commission within ninety days of her separation, nor had she been a party in *Sprogis*.

In November 1968, United Air Lines, Inc. entered into a new collective bargaining agreement which eliminated the "no marriage" policy and granted reinstatement to certain attendants, but did not include Ms. Evans. She was rehired in 1972, but as a new employee. Informal requests for seniority credit due to her prior employment having been denied, Ms. Evans brought suit.

The Supreme Court noted that the seniority system was not alleged to differentiate between similarly situated males and females on the basis of sex. Concededly, the system gave current effect to a past act of discrimination. However, the Supreme Court held that United Air Lines, Inc. was entitled to treat the past act as lawful after the time had expired within which charges could be filed.

The Supreme Court pointed out in *Evans, supra,* at page 558, that:

"* * * A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

"Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently from former employees who resigned or were discharged for a non-discriminatory reason. In short, the system is neutral in its operation." (Emphasis *sic*.)

In the present case, appellant did not allege that the "one hundred twenty day" policy treated teachers who had failed to teach for the prescribed period due to the maternity leave policy any differently from those who had failed to teach for the prescribed period for any other reason. The "one hundred twenty day" policy is neutral in its operation.

Appellant's attempt to distinguish *Evans* on the basis that Title VII protection was not available to her until the amendment — during the period in which she was not employed by appellee — of Section 2000e *et seq.,* Title 42, U.S. Code, to include state agencies and educational institutions, must also fail. The rationale of *Evans* appears applicable as well as to actions which could have been brought under Sections 1981 and 1983, Title 42, U.S. Code. *Simmons* v. *South Carolina State Port Authority* (D. S.C. 1980), 495 F.Supp. 1239. In the present case, the trial court determined, and appellant has not sufficiently refuted, that appellant could have, but failed to institute action directly against the maternity leave policy, within the time limits permitted

for bringing actions under Section 1983, Title 42, U.S. Code.

No charge having been timely filed against the maternity leave policy, appellee was entitled to treat the past act as lawful.

Appellant's second, third and fourth assignments of error are denied.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and McCORMAC, JJ., concur.

BROGAN, J., of the Second Appellate District, sitting by designation in the Tenth Appellate District.