GREEN LOCAL TEACHERS
ASSOCIATION, APPELLANT, *v.*
BLEVINS ET AL., APPELLEES.

(No. 1655—Decided
December 7, 1987.)

*Cloppert, Portman, Sauter, Latanick & Foley, Mark A. Foley, Suzanne R. Blatt* and *Russell E. Carnahan,* for appellant.

*R. Alan Lemons,* for appellees.

STEPHENSON, J. This is an appeal from a judgment entered by the Scioto County Court of Common Pleas in favor of Ronald Blevins, Treasurer of the Green Local Board of Education, and the Green Local Board of Education, defendants below and appellees herein, on the complaint of the Green Local Teachers Association, plaintiff below and appellant herein, averring that appellees had improperly unilaterally deducted money from appellant's members' biweekly salary checks.

Appellant assigns the following errors:

"1. The trial court erred in ruling that the school board's unilateral recovery of a claimed overpayment of wages, without prior judgment or prior notice and hearing, did not constitute a deprivation of teachers' property without due process of law.

"2. The trial court erred in ruling that the school board or its treasurer had the authority to recover the alleged overpayments, which were made solely as the result of the treasurer's mistake."

On June 12, 1986, appellant filed a verified complaint which averred that it was the duly recognized bargaining representative of the certified, regular full- or part-time classroom teachers employed under a written teaching contract with appellee Green Local Board of Education, that on or about May 30, 1986, appellee Blevins issued paychecks to appellant's members that were for amounts less than those received on prior paychecks, that appellee Blevins issued a letter informing appellant's members that their paychecks would be reduced in order to rectify his miscalculation, that appellant's members had relied upon and planned around the receipt of a set amount of pay, and that appellant's members were given no opportunity to respond before appellee Blevins instituted the unilateral deductions. Appellant's complaint prayed for a declaration that appellees' actions were violative of constitutional due process and state statutory requirements, an injunction restraining appellees from continuing to deduct money from the salaries of appellant's members, and damages to appellant's members in the amount deducted from their salaries by appellees. Additionally, on June 12, 1986, appellant moved for a temporary restraining order and a preliminary injunction.

On July 15, 1986, appellees filed an answer generally denying the averments of appellant's complaint and stating that the daily rate of pay for back pay had been erroneously calcu-

lated and paid to appellant's members under a mistake of fact in that it was calculated on a nine-month rather than a twelve-month basis. Appellees also filed a counterclaim, in the alternative, against appellant's members for a sum equal to the payments mistakenly advanced to each.

On July 22, 1986, the trial court filed a pretrial order stating that the parties had agreed to submit the case upon stipulations and trial briefs. The parties subsequently filed trial briefs and, on July 25, 1986, filed the following stipulation of facts:

"1. That exhibit A is a true and accurate copy of the salary schedule in effect on July 1, 1985.

"2. That exhibit A was used to figure the payroll for nine (9) bi-weekly pay periods until an agreement was reached between plaintiff and defendant, Green Local Board of Education, to place into effect a new salary schedule, exhibit B, on the 29th day of November, 1985.

"3. That exhibit B was agreed to be applied retroactively as of July 1, 1985.

"4. That Ronald Blevins, Treasurer, calculated this lump-sum retroactive pay by multiplying the number of days worked during the nine pay periods prior to the agreement by the daily rate earned (9-month basis) rather than by the daily rate drawn (12-month basis).

"5. That Ronald Blevins figured subsequent bi-weekly paychecks by dividing the new yearly salary under exhibit B by 26 pay periods rather than by dividing the remaining salary due by the remaining 17 pay periods, which if continued would result in payment of more than contracted salaries.

"6. That the Treasurer paid and the teachers received the lump-sum retroactive pay and subsequent pay without knowledge of the miscalculation.

"7. That Ronald Blevins, upon discovery of his miscalculation, began on May 30, 1986, deducting sums to recover this amount over the remaining 7 pay periods in school year 1985-1986.

"8. That Blevins' action was taken without prior notice to the Board of Education.

"9. That exhibit C, the only notice to the teachers, was included in the pay envelopes containing the first paycheck affected by the deduction.

"10. That the defendant, Green Local Board of Education, at its regular meeting on June 16, 1986, approved retroactively the two prior payroll deductions and approved all further deductions.

"11. That exhibit D is a true and accurate copy of the collective bargaining agreement in effect at all relevant times between plaintiff and defendant, Green Local Board of Education.

"12. That exhibit E are [sic] true and accurate copies of the payroll cards of the affected teachers.

"13. That the miscalculation may or may not have affected the teachers' income tax liability for the year 1985.

"14. The amounts of attempted recovery from each teacher range from $111.76 to $64.99.

"15. That should it be determined that damages be awarded, the amount is capable of verification by the parties to this action, or, if necessary, through an evidentiary hearing on the question of damages only."

The stipulated exhibits included the old salary schedule, which was based upon years of service and level of education, the new salary schedule based upon the same factors but representing a 5.182 percent salary increase, and a letter from appellee Blevins included in appellant's members' pay envelopes containing the first paycheck affected by the deduction which provided, in pertinent part, as follows:

"In rechecking the yearly salary of all employees recently, an error was discovered concerning the back pay that was paid 11-29-85.

"The daily rate was paid on a 9 month basis instead of prorated on a 12 month basis. This miscalculation resulted in an overpayment to each employee.

· "Therefore, starting with this check and up through the last check in August (6 pays) this amount will be deducted from your pay. This action will insure that you will not exceed your yearly salary."

The remaining stipulated document was the collective bargaining agreement between appellant and appellee Green Local Board of Education, which provided in Article XVIII, entitled "PAYROLL PROCEDURES," that "[m]embers of the Bargaining Unit shall be paid on a bi-weekly basis." No specification as to the amount of such bi-weekly salary payment was included in the collective bargaining agreement. On September 15, 1986, the trial court entered judgment in favor of appellees.

Appellant's assignments of error essentially attack the right of appellees to recover the overpayments and the method utilized by appellees to institute such recovery. We initially consider appellant's second assignment of error, which asserts that the trial court erred in ruling that appellees had the authority to recover the alleged overpayments, which were made solely as the result of appellee Blevins' mistake.

Appellant argues that courts will not grant relief from unilateral mistakes of fact that result from the complaining party's negligence, that the payments made to the teachers were made and accepted in good faith and under color of law, and that R.C. 117.28, 3317.13(B) and 3317.14 strictly prohibited the unilateral deductions herein.

Money paid to another under the mistaken supposition of the existence of a specific fact which would entitle the other to the money, which money would not have been paid had it been known to the payer that the fact did not exist, may be recovered, provided the payment does not result in such a change in the position of the payee that it would be unjust to require a refund. *Firestone Tire & Rubber Co.* v. *Central Natl. Bank of Cleveland* (1953), 159 Ohio St. 423, 50 O.O. 364, 112 N.E. 2d 636, paragraph four of the syllabus; *Shearson/American Express, Inc.* v. *Mann* (C.A. 6, 1987), 814 F. 2d 301, 305; *Bank One of Columbus* v. *Lake States Cartage, Inc.* (C.P. 1985), 30 Ohio Misc. 2d 22, 24, 30 OBR 286, 288, 506 N.E. 2d 1234, 1236-1237. Moreover, if the payer is negligent in failing to discover the mistake, his negligence does not automatically preclude recovery. *Firestone Tire & Rubber Co.,* *supra,* at paragraph three of the syllabus; *Ohio Co.* v. *Rosemeier* (1972), 32 Ohio App. 2d 116, 119, 61 O.O. 2d 105, 107, 288 N.E. 2d 326, 329; *Bank One of Columbus, op. cit.* Rather, it must be shown that the payer purposefully did not discover the facts or that the payer had a legal duty to discover the factors. *Firestone Tire & Rubber Co., supra,* at paragraph three of the syllabus; *Shearson/American Express, Inc., supra.*

In the case at bar, the stipulated facts indicate that any overpayment of appellant's members' salaries was the result of appellee Blevins' negligence in failing to discover his mistake of fact in calculating biweekly salary payments. However, the evidence adduced herein fails to indicate that appellees either purposefully did not discover the facts or that they had a legal duty to discover the facts. Moreover, although appellant's complaint averred that its members "relied upon and planned around" the receipt of a set amount of pay, the evidence, *i.e.,* the stipulated

facts and exhibits, indicates no such reliance or prejudice except to the extent that such miscalculation "may or may not have affected" appellant's members' 1985 income tax liability. Therefore, pursuant to *Firestone, supra,* appellees had the right to recover any overpayments paid as a result of appellee Blevins' negligent mistake of fact.

Regarding the rule of nonrecovery of payments made lawfully and in good faith, the general rule is that payments which are made in good faith and under color of law cannot ordinarily be recovered, even though the payments are later found to be unconstitutional. *State, ex rel. Parsons,* v. *Ferguson* (1976), 46 Ohio St. 2d 389, 75 O.O. 2d 457, 348 N.E. 2d 692; *State, ex rel. Gillie,* v. *Warren* (1973), 36 Ohio St. 2d 89, 65 O.O. 2d 241, 304 N.E. 2d 242. However, the "erroneous" payments sought to be recovered in *Parsons* and *Gillie* had been made, respectively, in reliance on a subsequently overruled court decision and an erroneous court order. In the case *sub judice,* the overpayments were the result of an arithmetical miscalculation of appellant's members' salaries, rather than any reliance on a legal decision or court order subsequently determined to be invalid. Cf. *White* v. *Columbus Bd. of Edn.* (1982), 2 Ohio App. 3d 178, 180, 2 OBR 195, 196, 441 N.E. 2d 303, 305. Additionally, in that the collective bargaining agreement did not specifically state that the amount of the biweekly payments would be equal to one twenty-sixth of the appellant's members' salaries, there was arguably no "recovery" of "overpayments" contrary to the express terms of the contract.

Appellant next argues that the unilateral deductions were precluded by R.C. 117.28, 3317.13(B) and 3317.14. R.C. 117.28 provides, in pertinent part, as follows:

"Where an audit report sets forth that any public money has been illegally expended, or that any public money collected has not been accounted for, or that any public money due has not been collected, or that any public property has been converted or misappropriated, the officer receiving the certified copy of the report pursuant to section 117.27 of the Revised Code may, within one hundred twenty days after receiving the report, institute civil action in the proper court in the name of the public office to which the public money is due or the public property belongs for the recovery of the money or property and prosecute the action to final determination."

Under its statutory predecessor, former R.C. 117.10, it was provided, in pertinent part, as follows:

"No claim for money or property found to be due to any public treasury or custodian thereof in any report shall be abated or compromised, either before or after the filing of civil actions, by any board or officer or by order of any court unless the attorney general first gives his written approval."

Former R.C. 117.10 did not prohibit self-help by the pertinent board or officer, but simply required prior approval of the Attorney General in situations involving abatement or compromise of the relevant funds. *White* v. *Columbus Bd. of Edn., op. cit.* However, such prior approval of the Attorney General and similar language to that cited in former R.C. 117.10 is not reproduced in R.C. 117.28 and such current statutory provision does not appear to preclude the self-help unilateral deductions made by appellee Blevins and ratified by appellee Green Local Board of Education. Further, in that there was no express contractual provision regarding the amount of the biweekly payments and there was no indication that the amount of salaries

specified in the collective bargaining agreement was ever decreased, we agree that there was no statutorily proscribed decrease of teachers' salaries pursuant to R.C. 3317.13(B) and 3317.14.

As noted by appellees, most of the cases cited by appellant in support of its second assignment of error are distinguishable in that they involve cases where the unilateral mistake was made prior to the contract and affected the contract's formation. The right to recovery of overpayments by unilateral deductions when a calculation mistake is discovered in the middle of the contract year has been upheld in Ohio. See, *e.g., Joseph* v. *Southwestern City School Dist.* (Feb. 25, 1980), Franklin C.P. No. 79-CV-10-526, unreported. Accordingly, pursuant to *Firestone, supra,* and other authorities, appellees had the right to recover the overpayments and their mode of effectuating such recovery, through unilateral deductions of remaining paychecks in the relevant year, was not contrary to state statutory law. Appellant's second assignment of error is overruled.

Appellant's first assignment of error asserts that the trial court erred in ruling that appellees' unilateral recovery of a claimed overpayment of wages, without prior judgment or prior notice and hearing, did not constitute a deprivation of the teachers' property without due process of law. Under this assignment of error, appellant argues that although the teachers were given notice through appellee Blevins' letter as to the unilateral deductions, they were not given a prior opportunity to respond to such actions and thereby were deprived of their constitutional right to procedural due process.

"In providing that no state shall 'deprive any person of life, liberty, or property, without due process of law,' the Fourteenth Amendment to the United States Constitution requires that substantial procedural safeguards be provided in our legal system before one may be deprived of a property right." *Peebles* v. *Clement* (1980), 63 Ohio St. 2d 314, 317, 17 O.O. 3d 203, 204-205, 408 N.E. 2d 689, 691. Section 16, Article I of the Ohio Constitution provides substantially the same safeguards as does the Fourteenth Amendment by specifying that injured persons shall have "remedy by due course of law." *Peebles, op. cit.; State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6, 15 O.O. 3d 3, 399 N.E. 2d 66.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents* v. *Roth* (1972), 408 U.S. 564, 569. Therefore, the applicability of the constitutional guarantee of procedural due process depends in the first instance on the presence of a legitimate "property" or "liberty" interest within the meaning of the Fourteenth Amendment. *Roth, supra,* at 571; *Morrissey* v. *Brewer* (1972), 408 U.S. 471, 481; *Sweeney* v. *Tucker* (1977), 473 Pa. 493, 523, 375 A. 2d 698, 712.

The Supreme Court of the United States in *Roth, supra,* at 577, held that the following is required to have the requisite property interest in a specific benefit:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims."

Therefore, in order to allege a due process deprivation of a property interest under the Fourteenth Amendment, the claimant must demonstrate that he had a "legitimate claim of entitlement" to that interest. *Roth, supra; Montez* v. *San Antonio Indep. School Dist.* (C.A. 5, 1987), 817 F. 2d 1124, 1125; *Sweeney, supra,* at 524, 375 A. 2d at 713. Such "legitimate claim of entitlement" may be shown by existing rules or understandings that stem from an independent source such as state law. *Roth, supra,* at 577; *Dorian* v. *Bd. of Edn.* (1980), 62 Ohio St. 2d 182, 185, 16 O.O. 3d 208, 210-211, 404 N.E. 2d 155, 158; *Schaper* v. *City of Huntsville* (C.A. 5, 1987), 813 F. 2d 709, 713. Furthermore, such protected property interest may be created by implied contract. *Perry* v. *Sindermann* (1972), 408 U.S. 593; *Dorian, supra; Montez, supra.*

The property right asserted by appellant herein is the right of its members to an amount equal to one twenty-sixth of their annual salary in each biweekly check. Since the collective bargaining agreement did not specify any amount for each biweekly check, the asserted property right does not rest upon an express contractual provision. At most, such right is an implied contractual provision.

The purpose of contract construction is to effectuate the intent of the parties. *Skivolocki* v. *East Ohio Gas Co.* (1974), 38 Ohio St. 2d 244, 67 O.O. 2d 321, 313 N.E. 2d 374, paragraph one of the syllabus. The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. *Kelly* v. *Medical Life Ins. Co.* (1987), 31 Ohio St. 3d 130, 31 OBR 289, 509 N.E. 2d 411, paragraph one of the syllabus; *Blosser* v. *Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393. However, explicit contractual provisions may be supplemented by other agreements implied from the promisor's words and conduct in light of the surrounding circumstances, with "[t]he meaning of [the] words and acts found by relating them to the usage of the past." 3 Corbin on Contracts (1960), Sections 561-572A, at 288; *Perry, supra,* at 602; *Mr. Mark Corp.* v. *Rush, Inc.* (1983), 11 Ohio App. 3d 167, 11 OBR 259, 464 N.E. 2d 586.

In the case at bar, the stipulations might be reasonably construed to indicate that the parties intended equal salary payments of one twenty-sixth for each biweekly check where appellee Blevins both before and after the discovery of his miscalculation appeared to treat the payments in this manner during the course of his performance pursuant to the collective bargaining agreement. Although such evidence would necessarily preclude summary judgment as to the issue of the existence of such asserted property interest, see *Perry, supra,* when after a trial on the merits and when not contained in the express contractual provision of the collective bargaining agreement, we are not persuaded that the trial court abused its discretion in failing to find a constitutionally protected property interest rather than a mere unilateral expectation on the part of appellant's members.

Moreover, the purpose of such protection of property rights is to protect those claims "upon which people rely in their daily lives," *Roth, supra,* at 577, and in the instant case, the stipulated evidence fails to indicate any reliance on the part of appellant's members with respect to the lack of equal payments.

Assuming, *arguendo,* that appellant's members had a property right in continuing to receive one twenty-sixth of their annual salaries in their biweekly checks, the question remains as to what process is due. *Cleveland Bd. of Edn.* v. *Loudermill* (1985), 470 U.S.

532, 541; *Morrissey, supra.* An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Loudermill, supra; Schaper, supra.* Whether an interest is entitled to due process protection depends on the nature of the governmental activity and the citizen's dependency and justifiable reliance on that activity. *Sweeney, supra,* at 524, 375 A. 2d at 713.

In *State* v. *Adams* (1987), 107 Wash. 2d 611, 732 P. 2d 149, the Supreme Court of Washington held that unilateral action by the state in deducting reasonable amounts from employees' subsequent paychecks in seeking to recover alleged overpayments of shift differential premium paid to employees for working evening or night shifts constituted a violation of the employees' constitutional right to due process. See, also, *Benton* v. *Wilmer-Hutchins Indep. School Dist.* (Tex. App. 1983), 662 S.W. 2d 696; *Feinberg* v. *Bd. of Edn.* (Sup. Ct. 1973), 74 Misc. 2d 371, 344 N.Y. Supp. 2d 618.

However, the issue in *Adams* on appeal was structured as to whether the summary withholding of future wages to recover overpayments comports with due process, "where the employees dispute the existence or amount of overpayments." *Id.* at 616, 732 P. 2d at 154. Conversely, herein, although appellant disputed the overpayments in its trial brief, the only evidence submitted below, *i.e.,* the stipulations, indicated no good faith dispute as to the existence or amount of the overpayments made as a result of appellee Blevins' miscalculation.[1]

Appellant cites *Sniadach* v. *Family Finance Corp.* (1969), 395 U.S. 337, in support of its argument that the trial court erred in failing to find a violation of appellant's members' constitutional right to procedural due process herein. However, the *Sniadach* majority opinion emphasized at 340 that the Wisconsin prejudgment garnishment statute imposed "tremendous hardship on wage earners with families to support" and the Wisconsin statutory exemption granted the wage earner was insufficient to support the debtor for any one week. Additionally, the concurring opinion of Justice Harlan noted that the usual requisites of procedural due process would only need to be accorded where the deprivation cannot be characterized as *de minimis. Id.* at 342. But, see, *Cone* v. *State Bar of Florida* (C.A. 11, 1987), 819 F. 2d 1002, 1007, holding that there is no *de minimis* standard for due process violations.

In the case at bar, there is no indication that the relatively small

---

[1] By so holding, we do not wish to condone the general resort to self-help by deducting alleged overpayments from current salaries due. See, *e.g., Benton, supra,* at 699, where a Texas appellate court held that although such actions cannot be technically described as either a garnishment or an attachment, the "asserted remedy of self-help is even more strongly opposed to the policy underlying this limitation of judicial remedies, since it is not subject to similar judicial safeguards." We thus reject the trial court's broad assertion that "[f]inding that this does not constitute a garnishment disposes of plaintiff's * * * contention that the action of the defendants constituted a taking of property without due process."

However, under the peculiar circumstances herein, with no express contractual provision as to the amount of each biweekly paycheck, no evidence of any reliance on a set amount of pay for each paycheck, and the relatively small deductions involved, the trial court did not err in finding no violation of appellant's right to constitutional due process.

amount deducted from the teachers' paychecks worked a "tremendous hardship" or constituted anything other than a *de minimis* deprivation. Moreover, as noted earlier, there can be no deprivation where there is no property interest. For the foregoing reasons, appellant's first assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

GREY, P.J., and ABELE, J., concur.