THE STATE EX REL. ZIMMERMAN, APPELLANT, *v.* TOMPKINS, DIR., APPELLEE.

[Cite as *State ex rel. Zimmerman v. Tompkins*
(1996), 75 Ohio St.3d 447.]

(No. 95–1258—Submitted March 5, 1996—Decided May 8, 1996.)

*Philip Wayne Cramer,* for appellant.

*Betty D. Montgomery,* Attorney General, *Cynthia A. Cooper* and *Jack W. Decker,* Assistant Attorneys General, for appellee.

---

*Per Curiam.* Zimmerman asserts that the court of appeals erred in granting Tompkins's motion for summary judgment and denying the requested writ of mandamus. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

In order to be entitled to a writ of mandamus, Zimmerman had to establish a clear legal right to the requested relief, a clear legal duty on the part of Tompkins to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 218–219, 631 N.E.2d 150, 152. The court of appeals determined that as to Zimmerman's claim for a restoration of compensation, the collective bargaining agreement constituted an adequate legal remedy precluding a writ of mandamus.

Zimmerman contends that the allegations of his complaint were deemed admitted when Tompkins failed to timely file his answer. However, the dismissal motion filed by Tompkins which was subsequently converted by the court of appeals to a summary judgment motion tolled the time to file an answer until the summary judgment motion was resolved. Civ.R. 12(A) and (B); see, generally, 6 Moore's Federal Practice (2 Ed.1988) 56–83 to 56–84, Paragraph 56.08, fn. 9 (Fed.R.Civ.P. 12[b][6] motion to dismiss converted into motion for summary judgment tolls time to file answer until adverse ruling on converted motion). In addition, when the respondent is a state officer like Tompkins who is sued in his representative capacity, courts must look beyond simple admissions resulting

from the failure to timely serve a responsive pleading. *State ex rel. Shimola v. Cleveland* (1994), 70 Ohio St.3d 110, 112, 637 N.E.2d 325, 326.

Summary judgment is appropriate where the nonmoving party does not produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus; *State ex rel. Morley v. Lordi* (1995), 72 Ohio St.3d 510, 513, 651 N.E.2d 937, 940. When a motion for summary judgment is made and supported as provided in Civ.R. 56, the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue. Civ.R. 56(E); *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.

Tompkins supported his motion for summary judgment with an affidavit and incorporated exhibit establishing that the collective bargaining agreement provided a grievance and arbitration procedure. To the extent that Zimmerman alleged violations of the collective bargaining agreement, the grievance and arbitration procedure provided therein constituted an adequate remedy at law which precluded extraordinary relief in mandamus. *State ex rel. Johnson v. Cleveland Hts./Univ. Hts. School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 189, 192–193, 652 N.E.2d 750, 752; *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.* (1994), 71 Ohio St.3d 26, 34, 641 N.E.2d 188, 196. The fact that this procedure may no longer be available to Zimmerman due to the time limits set forth in the collective bargaining agreement does not render this remedy inadequate. *Johnson,* 73 Ohio St.3d at 193, 652 N.E.2d at 753. Where a plain and adequate remedy at law has been unsuccessfully invoked, a writ of mandamus will not lie to relitigate the same issue. *State ex rel. Nichols v. Cuyahoga Cty. Bd. of Mental Retardation & Dev. Disabilities* (1995), 72 Ohio St.3d 205, 209, 648 N.E.2d 823, 827.

Zimmerman also alleged violations of Section 1983, Title 42, U.S.Code and the United States and Ohio Constitutions as to his alleged reduction in compensation. Yet, Zimmerman failed to introduce summary judgment evidence to raise a genuine issue of material fact, instead relying on the conclusory allegation of his unsworn complaint that he had "no plain and adequate remedy in the ordinary course of the law." Zimmerman did not adduce evidence that these violations were any different from the alleged violations of the collective bargaining agreement.

In addition, Zimmerman possessed an adequate remedy at law as to his federal civil rights and federal constitutional claims by a Section 1983 action in state common pleas court or federal district court. *State ex rel. Peeples v. Anderson* (1995), 73 Ohio St.3d 559, 560–561, 653 N.E.2d 371, 373; see *Weinfurtner v.*

*Nelsonville–York School Dist. Bd. of Edn.* (1991), 77 Ohio App.3d 348, 355–356, 602 N.E.2d 318, 323. Further, as to the alleged state constitutional violation, it is evident that Zimmerman alleged only a *de minimis* deprivation of property and that the agreement's grievance and arbitration procedure provided sufficient notice and opportunity to contest the administrative action. See, generally, *Ohio Assn. of Pub. School Emp., AFSCME, AFL–CIO v. Lakewood City School Dist. Bd. of Edn.* (1994), 68 Ohio St.3d 175, 624 N.E.2d 1043; *Green Local Teachers Assn. v. Blevins* (1987), 43 Ohio App.3d 71, 77–78, 539 N.E.2d 653, 659–660. The court of appeals properly granted summary judgment on Zimmerman's compensation claim.

Zimmerman's complaint also contained a claim for a writ of mandamus compelling Tompkins to report the alleged criminal violations committed by ODHS employees in connection with his leave forms. Zimmerman informed Tompkins of these alleged violations, but Tompkins refused to report them to law enforcement officials. Zimmerman can report these alleged violations to law enforcement officials himself. See R.C. 124.341(A) ("If the employee reasonably believes that a violation or misuse of public resources is a criminal offense, the employee, in addition to or instead of filing a written report with the supervisor or appointing authority, may report it to a prosecuting attorney, director of law, village solicitor, or similar chief legal officer of a municipal corporation, to a peace officer * * * or * * * to the inspector general * * *."). This remedy is complete, beneficial, and speedy as to Zimmerman's assertion that Tompkins violated R.C. 2921.22(A) by failing to report the alleged criminal conduct. Therefore, Zimmerman was not entitled to a writ of mandamus on this claim either. See, *e.g., State ex rel. Tipton v. Schisler* (Sept. 24, 1991), Scioto App. No. 90CA1926, unreported, 1991 WL 192733 (Harsha, J., concurring) (mandamus does not lie to compel city solicitor and city prosecutor to file criminal charges where relator possesses adequate remedy by filing criminal charges himself under Crim.R. 3).

Accordingly, for the foregoing reasons, the court of appeals properly granted summary judgment in favor of Tompkins and denied the requested mandamus relief. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., PFEIFER and COOK, JJ., concur.

DOUGLAS, J., concurs in judgment only.

RESNICK and F.E. SWEENEY, JJ., concur in judgment only.

WRIGHT, J., not participating.

Douglas, J., concurring in judgment only. I write separately for two reasons. First, the lead opinion cites *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, for the proposition that a nonmoving party in a summary judgment matter must produce evidence " * * * *on any issue* for which that party bears the burden of production at trial." (Emphasis added.) That is not an accurate statement and, in fact, that proposition in *Wing* was modified in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

Second, it should be pointed out that the lead opinion does have it right when it says that a summary judgment motion has to, in some way, be "supported" as provided in Civ.R. 56. This is what a majority of this court held in *Dresher, supra.* Clearly, *Dresher* did not change the rule for a court's deciding a summary judgment motion. Further, it is interesting to note that the Honorable Walter Herbert Rice, Judge of the United States District Court for the Southern District of Ohio, Western Division, ruled, on March 14, 1996, in the case of *Frilling v. Anna* (Mar. 14, 1996), S.D.Ohio No. C–3–95–194, unreported, that " * * * a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, *only* upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, *specifically called to its attention by the parties.*" (Emphasis added.) *Id.* at 9. Further, Judge Rice, quoting from *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274, said, "Of course [the moving party] *always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions* of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (Emphasis added.) *Id.* at 6.

Accordingly, when the Ohio Hospital Association uses inaccurate and inflammatory language, as it did in the March 15, 1996 edition of the *Ohio Hospital Association News* concerning the *Dresher* case, the causes of justice and accuracy are not well served. The article, in part, said that "[t]he *Dresher* decision is likely to affect motions for summary judgment in all civil lawsuits, requiring courts to continue frivolous litigation through at least the plaintiff's presentation of evidence during trial, after which a trial judge could issue a directed verdict in favor of the defendant. The ruling is likely to increase the pressure on defendants to settle frivolous cases in order to avoid the higher cost of going to trial." See Exhibit "A" attached. Those who might need some assurance can be assured that trial judges have been ruling on summary judgment motions for years and they understand that a properly supported motion for summary judgment should be granted. Conversely, a naked summary judgment motion that does not point to anything in the record to support the motion is not well taken. As to "frivolous litigation" and "frivolous cases," I respectfully refer those

who might be concerned to R.C. 2323.51 and Civ.R. 11 and the cases thereunder, and to 1, Parts 1 & 2, Anderson's Ohio Civil Practice (1992) 240–4 to 240–6, 297–298, Sections 3.784, 3.785, 8.75 and 8.77.

Exhibit "A"

A Weekly Publication from the Ohio Hospital Association • 155 E. Broad Street, Columbus, Ohio 43215 • (614) 221-7614

# OHA NEWS
*Ohio Hospital Association*

**March 15, 1996**

## Supreme Court Rules Against Hospitals

Hospitals lost another round last week when four Ohio Supreme Court justices ruled against St. Elizabeth Medical Center (Dayton), refusing the hospital's request to dismiss suit involving controversial surgery 26 years ago. The hospital moved for summary judgment because the plaintiff in the words of Justice Deborah Cook, "never produced any evidence that could render the hospital liable" for the credentialing of Dr. James Burt in 1970. A motion for summary judgment can be made before trial begins, and generally requests a judge to issue a decision based upon the written evidence.

The decision came in one of many suits that were filed by women against Burt, who performed what has come to be known as "love surgery" on unsuspecting women. In this case -- Dresher v. Burt -- Justice Andrew Douglas wrote for Justices Alice Robie Resnick and Francis Sweeney that the hospital "must be able to specifically point to some evidence...which affirmatively demonstrates that [Dresher] has no evidence to support [Dresher's] claims." Justice Paul Pfeifer concurred in the judgment but declined to join in the opinion by Justice Douglas because it "may reshape the way the [summary judgment] rule is used in Ohio."

In Cook's dissent, with which Chief Justice Thomas Moyer and Justice Craig Wright joined, she argued that Douglas had misapplied the ruling of the U.S. Supreme Court in a previous, similar case and that Douglas's ruling "would require [the hospital] to affirmatively disprove non-existent facts." The Dresher decision is likely to affect motions for summary judgment in all civil lawsuits, requiring courts to continue frivolous litigation through at least the plaintiff's presentation of evidence during trial, after which a trial judge could issue a directed verdict in favor of the defendant. The ruling is likely to increase the pressure on defendants to settle frivolous cases in order to avoid the higher cost of going to trial. (Rick Sites, ricks@ohanet.org)

### State and Feds Move Toward Getting Medicare Certifications Going Again

Efforts are underway by state and federal legislators to get Medicare certification surveys back on track.

Because the federal budget crunch has forced cuts in funding to state health departments that conduct Medicare certification surveys, Ohio is one of 19 states that has a backlog of surveys to be completed. Currently over 100 Ohio health care providers are on the waiting list for their initial Medicare certification survey.

Language added to Sub H.B. 355, which is waiting for the governor's signature, will allow the Ohio Department of Health to collect fees from providers to conduct initial Medicare certifications. The bill is sponsored by Rep. Dale Van Vyven (R-Hamilton).

OHA expressed its concerns with this language because it does not include a cap on the fees which can be leveraged by ODH nor does it sunset if and when local health departments receive reimbursement for survey costs. However, OHA was successful in securing language that would at least limit the charges to those which are "actual and necessary."

Before the Medicare certification portion of H.B. 355 can be enacted, federal legislation must be passed to allow this change. The health aide to Rep. John Kasich (R-Westerville) has informed OHA that Kasich, with the help of Rep. David Hobson (R-Springfield), will try to include language in the Continuing Resolution to address the situation.

Also, U.S. Rep. Blanche Lambert Lincoln (D-AR) introduced a bill last week which would allow providers to pay federally approved national accrediting bodies, such as the Joint Commission on Accreditation of Healthcare Organizations, to conduct initial surveys of new facilities and programs to enable them to serve Medicare patients.

OHA will continue working with state and federal lawmakers to ensure that hospitals are not unfairly burdened with the survey costs. (Lisa Dodge, lisad@ohanet.org/Charles Cataline, charlesc@ohanet.org)

### Hospitals Reducing Costs

Hospitals are controlling costs according to the recently released Prospective Payment Assessment Commission's (ProPAC) Medicare report. The study shows that in 1994, hospitals were reimbursed 96.9 cents for every dollar spent on Medicare. This is up from 89.4 cents in 1993. Since Medicare payments have gone up only slightly, the data indicates that hospital costs have come down.

OHA data shows a similar trend. In its last study of Medicare reimbursement, hospitals were found to be operating more efficiently as hospital costs decreased while Medicare payments increased slightly (Charles Cataline, charlesc@ohanet.org)

### Study: Tort Reform = Lower Medical Costs

A Stanford University study found that tort reform--specifically damage caps on malpractice lawsuits--results in substantial reductions in medical costs. The study examined the cost of treating cardiac illness in the elderly and concluded that the cost savings resulted from less defensive medicine. S.B. 350 --tort reform -- has passed the House and is pending in the Senate Select Committee on Tort Reform The bill, supported by OHA, is sponsored by Rep Pat Tiberi (R-Columbus). (Rick Sites, ricks@ohanet org)