BANK ONE TRUST COMPANY, N.A., Appellee, et al.

v.

LaCOUR, Appellant, et al.

[Cite as *Bank One Trust Co., N.A. v. LaCour* (1999), 131 Ohio App.3d 48.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–525.

Decided Jan. 28, 1999.

---

*Weltman, Weinberg & Reis Co., L.P.A., Allen J. Reis* and *Maria C. Mariano,* for appellee.

*Paul Stehura,* for appellant.

---

DESHLER, Judge.

Defendant-appellant, Louis Bernard LaCour, appeals from a judgment of the Franklin County Court of Common Pleas ordering him to repay to plaintiff-appellee, Bank One Trust Company, N.A. ("Bank One"), $49,587.49, which had previously been erroneously remitted to appellant by Bank One.

The facts giving rise to the underlying obligation in this matter are of some complexity, and to the extent that they are not contested by the parties, they will be briefly summarized in this decision. Appellant was a partner with two other individuals, Leslie Green and Neil Schaeffer, in Biltmore, Ltd., a limited partnership engaged in the renovation of hotel space in Dayton, Ohio, to create elderly

housing. The project was approved through the United States Department of Housing and Urban Development, and bonds were issued to finance the renovation. Leslie Green was the predecessor in interest of another defendant in the present action in the Franklin County Court of Common Pleas, Thelma Hale. Hale is not a party to the present appeal.

Part of the project financing involved the creation of a first supplemental trust indenture agreement entered into between the partnership and appellee Bank One, under which Bank One was to serve as trustee to the bond holders of the project. Bank One held $198,350 in a debt service reserve fund ("DSRF"), which was to be held in reserve in connection with the issuance of the bonds and disbursed to appellant and Leslie Green when no longer required for the project.

Neil Schaeffer eventually filed for bankruptcy in United States Bankruptcy Court for the Southern District of Ohio. The trustee in that case brought an action against appellant, Leslie Green, and Biltmore Ltd., seeking to recover for services allegedly provided to the partnership by Schaeffer. The claims arising out of the bankruptcy action were eventually resolved pursuant to a stipulated order of settlement filed with the bankruptcy court in April 1986. The order provided that appellant and Leslie Green assign half of their interest in the DSRF to satisfy Schaeffer's claims against the partnership, and thus Bank One was to pay to the bankruptcy trustee fifty percent of the principal amount of the DSRF when these funds became payable to appellant. On May 12, 1987, the bankruptcy trustee assigned his interest in the DSRF payment to the Internal Revenue Service ("IRS"), in connection with substantial unpaid tax obligations owed by the petitioner in bankruptcy, Schaeffer. Bank One's legal department was aware of the assignment to the IRS and was a signatory to it.

On or about September 17, 1991, under the terms of the project, the entire DSRF became payable. Appellee, however, did not retain fifty percent to satisfy the IRS's interest pursuant to the bankruptcy settlement, but disbursed the entire fund to appellant and Leslie Green's successor in interest, Hale, each receiving $101,859. Bank One subsequently received, on February 21, 1996, a notice from the IRS demanding payment of the fifty percent interest in the DSRF. Appellee paid the IRS $99,175.

Having been made aware of its error in overpaying appellant and Hale, appellee initiated an action against appellant and Hale in September 1995, seeking recovery of the funds erroneously disbursed. The first case was subsequently dismissed without prejudice by appellee and refiled on November 27, 1996, alleging wrongful conversion and unjust enrichment, and seeking restitution of the amounts mistakenly paid. Appellant and Hale raised, *inter alia*, the defenses of estoppel and laches. The matter proceeded to a bench trial on March 4, 1998. The trial court found in favor of Bank One on the basis of mutual

mistake and further rejected the equitable defenses of laches and estoppel. The trial court entered judgment accordingly on March 31, 1998, ordering appellant and Hale to repay $49,587 each to appellee. The court denied appellee's request for prejudgment interest on the basis that appellee was responsible for its own mistake and the defendants should not be penalized by an assessment of interest.

Appellant has timely appealed and brings the following assignments of error:

"1. The trial court erred and abused its discretion in ruling that laches was not a valid defense to bar appellee's recovery in this matter.

"2. The trial court erred and abused its discretion in applying the *Rosemeier* case to defeat appellant's equitable defense of laches in this matter.

"3. The trial court erred and abused its discretion in not ruling that appellee was barred from recovering its negligent overpayment of money to appellant.

"4. The trial court erred and abused its discretion in not finding that appellant detrimentally changed his position as a result of appellee's overpayment.

"5. The trial court erred and abused its discretion in ruling that equitable estoppel was not a valid defense to bar appellee's recovery in this matter.

"6. The trial court decision and judgment are against the manifest weight of the evidence."

 Appellant's assignments of error raise interrelated issues and will be addressed together. It is well settled in Ohio that a payment made under a mutual mistake of fact may be recovered by the payor. " 'It is entirely immaterial that [the payee] honestly believed [that] he was entitled to the money, or that he was guilty of no fraud or duress in obtaining possession of it. * * * The test is whether [the payee] has a right to retain the money, not whether he acquired possession honestly or in good faith. If the money belongs to plaintiff and defendant can show no legal or equitable right to retain it, he ought in equity and good conscience, to pay it over.' " *Firestone Tire & Rubber Co. v. Cent. Natl. Bank of Cleveland* (1953), 159 Ohio St. 423, 434, 50 O.O. 364, 370, 112 N.E.2d 636, 642.

 In general, the equitable right to recover mistaken payments is, however, subject to equitable defenses. In *Firestone,* the Supreme Court held that recovery could be had "provided the payment does not result in such a change in the position of the payee that it would be unjust to require a refund." *Id.,* paragraph four of the syllabus.

In the case before us, appellee, through poor internal communication between the trust and legal departments regarding the legal obligation to pay part of the DSRF to the IRS, mistakenly overpaid appellant from that fund. Furthermore,

the trial court has made the factual finding that appellant was unaware that he had been overpaid, and appellee has not cross-appealed this determination by the trial court. It is therefore undisputed, for purposes of this appeal, that the amounts sought to be recovered by appellee were paid under a mutual mistake of fact and thus fall under the precedent established in *Firestone.*

■ Appellant asserts that the equitable considerations advanced in *Firestone* should bar repayment, and relies heavily upon *State ex rel. Steger v. Garber* (App.1979), 17 O.O.3d 153, in which a county welfare department sought to recover overpayments of welfare benefits to the defendant. The court found that the money could not be recovered, because the defendant had used the funds to purchase necessities such as food, clothing, and rent for himself and his large family. The court held that these expenditures for daily essentials of life, coupled with the absence of any assets from which to repay the welfare overpayments, constituted a sufficient detrimental change of position under *Firestone* to bar recovery by the welfare authorities.

In the case before us, appellant testified that he expended the funds overpaid to him by appellee on debts and day-to-day expenses of his law practice and that he has not retained the value of the overpayments in the form of concrete assets or other funds from which he could make restitution. Appellant proposes that *Steger* should be interpreted as standing for the proposition that the payee of mistakenly disbursed funds should never be required to make restitution if the mistakenly paid funds have been expended without giving rise to any traceable accretion of wealth to the payee. Indeed, some cases that have allowed restitution have done so purely on the basis that the value retained by the payee was traceable to a given asset. In *Ohio Co. v. Rosemeier* (1972), 32 Ohio App.2d 116, 61 O.O.2d 105, 288 N.E.2d 326, the court found that the payor could recover in restitution because the payee had used the funds to pay down her mortgage and had thus retained a benefit or value in tangible property. "[T]he defendant merely changed the cash into a paid mortgage and retained the value originally represented by plaintiff's mistaken payment." *Id.* at 120, 61 O.O.2d at 107, 288 N.E.2d at 329. Other courts, however, have not so generously interpreted the detriment requirement of *Firestone* as a bar to repayment. "In order for there to be a detrimental change so as to defeat a claim for restitution, it must be determined that the money paid by mistake, its value, or its *benefit* was not retained by [the defendant]." (Emphasis added.) *Rocky River Bd. of Edn. v. Fairview Park Bd. of Edn.* (1989), 63 Ohio App.3d 385, 387, 579 N.E.2d 217, 218.

Ohio courts have generally taken a broad view of what constitutes retention by the payee of the benefit or value of mistaken payments. In *Rocky River Bd. of Edn.,* the court found that a school district that had mistakenly received tax payments that should have been paid to another district had not detrimentally

changed its position even though the funds received in error had been expended on day-to-day operations, because defendant's school district had received and retained the value of the funds through being spared expenditure of its own tax revenues. In *Green Local Teachers Assn. v. Blevins* (1987), 43 Ohio App.3d 71, 539 N.E.2d 653, the court held that teachers receiving mistaken overpayments of salary could be required to make repayment through deductions from subsequent paychecks, and the fact that the mistaken payees had "relied upon and planned around" their erroneously large paychecks in their personal financial planning and expenditures did not constitute such prejudice that repayment would be barred. *Id.* at 73, 539 N.E.2d at 656.

There are thus two somewhat divergent views taken by Ohio courts on this issue: that held by the *Rosemeier* court, which sought to discern some definable benefit retained by the payee in the form of an accretion to wealth, and that taken by the courts in *Rocky River Bd. of Edn.* and *Blevins*, which found no bar to recovery despite the increased personal standard of living or increase in district budgetary outlays made in reliance upon the mistaken overpayments. We find that the trend expressed in the latter two cases is more applicable on the facts before us, primarily because to state flatly that prior dissipation of mistakenly received funds should always be a bar to recovery creates a rule that would bar equitable considerations in most cases. Furthermore, even if we were to adopt the position of the court in *Rosemeier*, appellant's own testimony was that he had in large part expended the funds toward reducing personal debts incurred by him or in his law practice. The reduction of appellant's pre-existing financial liabilities hardly rises to the level of "detriment," as contemplated in *Firestone*. It is apparent to us that the rule set forth in *Steger* should be an extremely limited one and that the facts of appellant's circumstances are not comparable with those of the welfare recipient in that case.

We accordingly find that appellant has failed to raise a sufficiently equitable defense to repayment of the mistakenly disbursed funds, pursuant to *Firestone*, and that the trial court did not err in finding that appellee was entitled to restitution of the mistakenly paid funds.

■■■ Appellant argues in the alternative that the equitable doctrine of laches should be invoked to bar recovery by appellee, based upon appellee's four-year delay in bringing this action. "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. It signifies delay independent of limitations in statutes. It is lodged principally in equity jurisprudence." *Smith v. Smith* (1957), 107 Ohio App. 440, 443–444, 8 O.O.2d 424, 426–427, 146 N.E.2d 454, 456–457. Accord *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328; *Thirty–Four Corp. v. Sixty–Seven Corp.* (1984), 15 Ohio St.3d 350, 15 OBR 472, 474

N.E.2d 295. "Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus. A determination on a defense based upon laches is primarily a question of fact to be resolved based upon special circumstances of each case. *Bitonte v. Tiffin Sav. Bank* (1989), 65 Ohio App.3d 734, 739, 585 N.E.2d 460, 463. The determination of the trial court on the issue of laches will accordingly not be reversed absent a finding of an abuse of discretion.

On the present facts, we find no abuse of discretion by the trial court in declining to apply the equitable defense of laches to bar recovery by appellee. Appellant has not established material prejudice resulting from the three-year delay by appellee in discovering its mistake, or the approximately one-year delay in commencing the present action. That delay does not appear to have materially affected appellant's position with respect to the overpayment, other than extending the period of his duration of his interest-free use of the money mistakenly paid to him. The question before the trial court was whether "facts have been stated to persuade the conscience of the court to grant appellant relief from the rights asserted by appellee." *Connin*, 15 Ohio St.3d at 36, 15 OBR at 135, 472 N.E.2d at 329. We find no abuse of discretion on the part of the trial court in determining that appellant has failed to proffer special circumstances to justify invoking the doctrine of laches.

Appellant's final argument is that the trial court should have applied the doctrine of estoppel to bar recovery by appellee. "Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.* (1994), 71 Ohio St.3d 26, 34, 641 N.E.2d 188, 196. "The doctrine of equitable estoppel generally requires actual or constructive fraud." *Id.* at 35, 641 N.E.2d at 196. Even if we are to assume constructive fraud on the part of appellee, which is difficult to establish on these facts, the doctrine of equitable estoppel appears to be almost entirely coextensive with the equitable defense to restitution set forth in *Firestone* and discussed above. Indeed, the defense to restitution set forth in *Firestone* can be taken as an expression of the doctrine of estoppel applied to these specific circumstances, although the court in *Firestone* did not so state. For the same reasons that lead us to conclude that recovery is appropriate under *Firestone*, we find that the doctrine of estoppel should not bar recovery by appellee.

In summary, we find that the trial court did not err in permitting recovery in restitution by appellee, and that neither the equitable doctrine of estoppel nor that of laches should operate to bar such recovery. Appellant's first, second, third, fourth, fifth, and sixth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas granting restitution to appellee is accordingly affirmed.

*Judgment affirmed.*

BOWMAN and McCORMAC, JJ., concur.

JOHN W. McCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C) Article IV, Ohio Constitution.