WHITLEY, APPELLANT, *v.* CANTON CITY SCHOOL DISTRICT BOARD OF
EDUCATION, APPELLEE.

[Cite as Whitley *v.* Canton City School Dist. Bd. of Edn. (1988),
38 Ohio St. 3d 300.]

(No. 87-1779—Submitted May 11, 1988—Decided August 31, 1988.)

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Ronald G. Macala, Cornelius J. Baasten* and *Anne Piero Silagy,* for appellant.

*Squire, Sanders & Dempsey* and *Wm. Michael Hanna,* for appellee.

H. BROWN, J. Our decision in this case turns upon interpretation of the collective bargaining agreement under which the parties are bound. The board has asserted three grounds in support of summary judgment: (1) the RIF provisions in the agreement only apply to areas in which the employee was certified at the time of layoff, (2) Whitley was not certified in elementary education at the time of hiring for the 1984-1985 school year, and (3) Whitley did not have "reasonable qualifications and experience equal" to the teachers hired over him. We find that the asserted grounds do not support summary judgment for the board.

## I

In order to support its argument that Whitley had no contractual right to be recalled for an area of certification acquired after he was laid off, the board in the court below claimed a prior practice of not recalling people to positions for which they were subsequently certified.[1] The board also directed attention to language in a proposed collective bargaining agreement

---

[1] We do not find the record to contain evidence of instances where other after-certified teachers were denied recall.

which explicitly provided recall rights for after-acquired areas of certification. However, where the terms of a contract are clear and unambiguous, extrinsic evidence may not be used as an aid in interpretation. *Rose* v. *New York Life Ins. Co.* (1933), 127 Ohio St. 265, 273, 187 N.E. 859, 862.

The language of the agreement makes no distinction between original and after-acquired areas of certification. Section B.2. of Article XVII of the agreement provides that "[n]o new teachers shall be employed by the Board while there are teachers on the RIF list *who are certified for any opening* * * *."* (Emphasis added.) This language clearly states that if a teacher is certified for an opening the teacher must be recalled. Therefore, the board had an obligation to consider Whitley for all openings for which he was certified.

## II

Neither party disputes that Whitley had to be certified in elementary education in order to trigger the board's recall obligations. However, the court of appeals found that the term "certified" means the date on which the Ohio Department of Education *issues* a certificate. Whitley argues that the term "certified" refers to the date on which certification *became effective.*

The collective bargaining agreement does not define "certified" or delineate the point at which a person is to be considered certified. Absent contractual language to the contrary it may be assumed that, when a word or phrase from a statute is utilized in a teaching contract, the parties are presumed to intend the meaning given to such words or phrases by the statute. *Jacot* v. *Secrest* (1950), 153 Ohio St. 553, 42 O.O. 31, 93 N.E. 2d 1; *Banks* v. *DeWitt* (1884), 42 Ohio St. 263, 274; *Stow*

*Teachers Assn.* v. *Stow Bd. of Edn.* (1981), 2 Ohio App. 3d 82, 2 OBR 91, 440 N.E. 2d 827.

Pursuant to R.C. 3319.30 and 3319.36, a person cannot receive compensation for teaching certain subjects, including elementary education, unless he or she is certified.[2] Thus, in order for the board to hire Whitley in elementary education, Whitley had to be certified in that area.[3]

The statutes governing provisional teacher certification recognize that completion of the educational requirements for certification is the point at which a teacher is entitled to certification. R.C. 3319.24 provides in part:

"Provisional certificates valid for four years *shall be issued* by the state board of education *to those who have completed the respective courses prescribed therefor* by the board in an institution approved by it for the type of preparation required * * *." (Emphasis added.)

Significantly, *R.C. 3319.36 explicitly provides for the payment of teachers for the first two months of the school year while their applications for certification are pending before the State Board of Education.* Paragraph two of R.C. 3319.36 provides:

"Notwithstanding the provisions of the foregoing paragraph of this section, the treasurer of a board of education may pay a teacher for services rendered during the first two months of the annual school session, provided such teacher is the holder of a bachelor's degree or higher and has filed with the state board of education an application for the issuance of a teacher's provisional certificate or one of a higher grade."

R.C. 3319.36 recognizes the delay involved in the issuance of certificates following the completion of the required course work. This provision negates the argument that a teacher is not certified until the certificate is issued. It anticipates and authorizes the precise sequence to the issuance of the elementary teaching certificate to Whitley. Though Whitley did not receive his certificate until October 30, 1984, the certificate, on its face, shows that Whitley was certified effective July 1, 1984. R.C. 3319.36 also authorizes the current practice of the Department of Education, which is to make all certificates effective on July 1 irrespective of the date of issuance. Baker, 1987-88 Handbook of Ohio School Law (1987) 265, Section 7.18.1, fn. 71.6.

Accordingly, we hold that where a

---

[2] R.C. 3319.30 provides in part that "* * * no person shall receive any compensation for the performance of duties as teacher in any school supported wholly or in part by the state or by federal funds who has not obtained a certificate of qualification for the position as provided for by section 3319.22 of the Revised Code and which certificate shall further certify to the good moral character of the holder thereof." Paragraph one of R.C. 3319.36 provides in part: "No treasurer of a board of education shall draw a check for the payment of a teacher for services until the teacher files with him * * * a written statement from the * * * superintendent of schools that the teacher has filed with him a legal teacher's certificate, or true copy thereof, to teach the subjects or grades taught, with the dates of its validity."

[3] The statutes preceding R.C. 3319.30 were consistent in forbidding employment without certification. For example, G.C. 7830 provided in part that: "No person shall be employed or enter upon the performance of his duties as teacher in any elementary school supported wholly or in part by the state in any school district who has not obtained from a certificating authority having legal jurisdiction a certificate of good moral character; that he is qualified to teach * * *." (108 Ohio Laws, Part I, 685.)

contractual dispute arises between a school board and a teacher regarding the date of the teacher's certification, the teacher will be considered certified on the date the certificate issued by the Ohio Department of Education became effective unless the contract specifically provides to the contrary.

In the present case, the board considered Whitley as certified for elementary education positions. The board interviewed Whitley for those openings. The board could not hire him for those positions if he was not certified to teach elementary education.

The board admits as much in submitting the affidavit of William Hunter, the appellee's Director of Personnel. Hunter stated:

"* * * I informed Mr. Whitley that upon receipt of a letter from the State Department of Certification he would become a 'candidate for any vacancies in the elementary area of certification.' By this, *I was informing Mr. Whitley he would be considered for an elementary vacancy just as any other person holding an Elementary certificate.*" (Emphasis added.)

Therefore, we find that Whitley was "certified" in elementary education, as the term is used in the collective bargaining agreement, and entitled to recall privileges for those openings for which the board interviewed him.

### III

The final basis upon which the board seeks to sustain summary judgment is its claim that Whitley did not have the same qualifications as those who were hired to fill elementary education vacancies.

The collective bargaining agreement, however, provides in Section A.3. of Article XIII that:

"*A vacancy does not exist,* as defined in Section A.1. above, *when there exists a certified staff member on the District's reduction in force list who is eligible to fill that position.*" (Emphasis added.)

Thus, if Whitley is entitled to the benefits of recall as a certified teacher on the RIF list, there would be no vacancy and hence no opportunity for the board to interview candidates other than Whitley. There would be no opening in elementary education until after the position had been offered to and declined by Whitley.

Even if the above contract language were ignored and a vacancy had existed, the board's argument is flawed. The board maintains that it was entitled to summary judgment on the basis of the language in Section B.2. of Article XVII which provides:

"* * * No new teachers shall be employed by the Board while there are teachers on the RIF list who are certified for any opening, unless there is no person on the RIF list with reasonable qualifications and experience equal to the person to be hired for the position."

That language, in the context of the entire contract, does not invite a comparison with other individuals. Whitley is a person, on the RIF list, with reasonable qualifications and experience sufficient to qualify him for the position to be filled. He was certified in elementary education and had taught in the Canton system since 1972. Seniority, pursuant to the contract, is determined by total teaching experience (and not experience in the area of certification). Section B.1.c. of Article XVII. Whitley, by virtue of the collective bargaining agreement, was entitled to be recalled as a teacher in elementary education.

Accordingly, we reverse the judgment of the court of appeals and enter final judgment in favor of Roger Whitley on his motion for summary judgment.

*Judgment reversed.*

304

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS and WRIGHT, JJ., concur.

HOLMES, J., dissents.

DOUGLAS, J., concurring. As described in Justice Brown's well-reasoned opinion, the contractual provisions involved in this case are clear and unambiguous. Nevertheless, we, again, find a district board of education ignoring the mutually bargained terms of a collective bargaining agreement. It seems that we are being fed a continued diet of such cases. This is so notwithstanding our admonitions in *Mahoning Cty. Bd. of Retardation* v. *Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St. 3d 80, 84, 22 OBR 95, 99, 488 N.E. 2d 872, 876, that: "* * * [c]ourts should not allow public employers to disregard the terms of their collective bargaining agreements whenever they find it convenient to do so. On the contrary, the courts will require public employers to honor their contractual obligations to their employees just as the courts require employees to honor their contractual obligations to their employers."

So long as a member of the bargaining unit, eligible to fill a particular position, is on an RIF list, there is no vacancy to be filled by "new hires." It is difficult to comprehend how Section A.3. of Article XIII can be read in any other way. Accordingly, it is entirely proper to award final judgment for appellant. I would go further, however, and make clear that appellant was (is) entitled to a teaching position for which he was (is) qualified and that he should be awarded any pay and benefits that he lost by virtue of the breach of the collective bargaining agreement by appellee. Since this court, in *Beifuss* v. *Westerville Bd. of Edn.* (1988), 37 Ohio St. 3d 187, 525 N.E. 2d 20, syllabus, recently ruled:

"A public school board of education is not liable for the payment of prejudgment interest on an award of back pay absent a statute requiring such payment or an express contractual agreement to make such payment," this may be the only way to send a message that collective bargaining agreements are sacrosanct and must be adhered to by school boards as well as by teachers.

SWEENEY, J., concurs in the foregoing concurring opinion.

HOLMES, J., dissenting. I am in agreement with the pronouncement of the majority set forth in paragraph two of the syllabus to the effect that a teacher will be considered certified on the date the certificate issued by the Ohio Department of Education becomes effective, unless the contract specifically provides to the contrary. However, I also agree with the dissenting judge in the court of appeals below that a question of fact exists as to one provision of the collective bargaining agreement, Section B.2. of Article XVII, which provides:

"* * * No new teachers shall be employed by the Board while there are teachers on the RIF list who are certified for any opening, *unless there is no person on the RIF list with reasonable qualifications and experience equal to the person to be hired for the position.*" (Emphasis added.)

The majority opinion holds that Whitley had preferential employment rights over a new teacher merely by being on the RIF list. A fair reading of the agreement would not result in such a conclusion. Under the quoted provision there are two contractual prerequisites which the appellant had to meet before he had preferential employment rights over a new teacher. First, he had to be certified, which condition, as stated, I agree he had met.

Second, he had to have qualifications and experience equal to the person to be hired for the job. This second prerequisite must be met under the agreement; but unfortunately the court of appeals did not remand for this finding of fact.

The majority herein completely disregards Section B.2. of Article XVII above by its finding that pursuant to another section of the collective bargaining agreement, *i.e.,* Section A.3. of Article XIII, no vacancy existed, and therefore the appellant should be automatically rehired. What an absurd manner in which to run an educational system. To read this clause to provide continued employment for a teacher on the RIF list where there are others more experienced and capable of teaching our children makes little sense of our educational values. The more reasonable interpretation of the language of Section A.3. of Article XIII would only require a finding that no vacancy existed if, after a comparative analysis of the qualifications of the teacher on the RIF list and the new applicants was conducted, the teacher on the RIF list measured up to the qualifications and experience of the new applicants.

The misreading of this agreement by the majority does a disservice to the board in exercising its discretion to determine the better-qualified teachers for openings on the staff. By entering final judgment here rather than remanding for a trial of this issue, this court takes upon itself the position of trier of the facts.

Accordingly, I dissent.