STERN ENTERPRISES, Appellant and Cross–Appellee,

v.

PLAZA THEATERS I AND II, INC. et al., Appellees and Cross–Appellants.

[Cite as *Stern Enterprises v. Plaza Theaters I & II, Inc.* (1995), 105 Ohio App.3d 601.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 94–P–0043.

Decided Aug. 7, 1995.

*Dworken & Bernstein Co., L.P.A., Howard S. Rabb* and *Lisa M. Spano,* for appellant and cross-appellee.

*Goodman, Weiss, Miller & Freedman, Richard S. Mitchell* and *Steven J. Miller,* for appellees and cross-appellants.

FORD, Presiding Judge.

Appellant and cross-appellee, Stern Enterprises, Inc.,[1] on November 30, 1992, brought suit against appellees and cross-appellants, Plaza Theaters I and II, John Harper, Merrill–Dickson Properties and Harper Investments, seeking termination of a lease, money damages, indemnification and preliminary injunction.

On January 15, 1993, appellees filed their answer and counterclaim for a temporary restraining order, a preliminary restraining order, a permanent injunction, damages and other relief. After appellees filed a motion for default, appellant, with leave of court, filed its answer to the counterclaim.

Factually, this case arises from a contractual dispute between the parties concerning a lease for the Kent Cinema movie theaters. In March 1974, appellees entered into a rental agreement with appellant for the projection houses. The parties, although long-time business acquaintances, had a disagreement concerning appellees' responsibilities under the lease. Specifically, appel-

---

1. Appellees, in a footnote, allege that appellant "is a legal fiction" and requests that this court dismiss the action. However, as appellees failed to assign this as error, let alone brief this issue as required by App.R. 12(A), we decline to address it.

lant claims that appellees failed to comply with their obligations under the agreement requiring timely rental payments and an accounting concerning gross admissions. This accounting provides a basis to determine appellant's entitlement to additional remuneration or "percentage rent" predicated upon a proportion of these figures.

Apparently dissatisfied with the results of a prior legal dispute[2] it brought arising from the same issues, appellant resorted to self-help, forcibly entering the premises and removing the lamphouses or light sources from the movie projectors and changing the door locks. It did this on two separate occasions, causing the theaters to be closed for a total of eight weeks. The referee concluded that appellant undertook both of these actions against the advice of counsel[3] and without affording appellees notice of their alleged breaches under the rental agreement as directed under the agreement prior to termination for default. The underlying lawsuit and countersuit resulted.

The court bifurcated the matter, and Count 1 (termination of the lease) and Count 2 (damages) of appellant's complaint and Count 3 (damages) of appellees' counterclaim were heard before a referee on September 8, 1993. He recommended finding for appellees and awarding damages in the amount of $30,853.84.[4] The court, after receiving the objections of the parties, adopted the referee's recommendations in toto, finding for the appellees and awarding $30,853.84 in damages.

The remaining issues, including appellees' request for punitive damages and attorney fees, were subsequently heard before the referee on January 13, 1994.[5]

---

2. Appellant had previously filed an action for forcible entry and detainer against appellees. The court ruled against appellant, finding that it had failed to comply with the notice requirements of the lease.

3. While appellant's attorney testified that he advised appellant that self-help was an option, he counseled against it.

4. Of that amount, $118.68 was for a locksmith, $450 was for rewiring of equipment damaged as a result of the removal of the lamphouses, and $30,285.16 was for lost income.

5. Appellant dismissed the surviving counts of its complaint without prejudice before the second hearing. This court has recently held:
"A dismissal of claims pursuant to Civ.R. 41(A)(1)(a) which does not dismiss the entire action is a nullity. *Borchers* [*v. Winzeler Excavating Co.* (Apr. 10, 1992), Montgomery App. No. 13297, unreported], at 3–4 [1992 WL 82681]. Thus the dismissals [of the parties without prejudice] were nullities and the claims against these parties remain." *Reagan v. Ranger Transp., Inc.* (1995), 104 Ohio App.3d 15, 660 N.E.2d 1234.
Therefore, the order addressing the disputed claims was interlocutory, precluding this court from asserting jurisdiction over the matter. *Id.*
However, in the matter *sub judice*, the second hearing in effect adjudicated appellant's dismissed claims. As noted, both parties were seeking equitable relief. The court, in granting

The referee also concluded that appellant had converted appellees' equipment to force appellees to terminate or modify the lease agreement. This, the referee determined, was malicious, and he recommended $1 in punitive damages and $19,890 in attorney fees.

The court, again, after reviewing the parties' objections, entered judgment for appellees in accordance with the recommendation. From these two entries, appellant timely appealed submitting the following assignments:

"1. The court erred as a matter of law and to the prejudice of appellant in awarding punitive damages based on count three of appellee's [*sic*] counterclaim, where there was no malice and no recovery by appellee [*sic*] on record of an award of actual damages in tort.

"2. The trial court abused its discretion in finding that the percentage rent for the year ending June 30, 1992 is not due until April 30, 1994.

"3. The trial court's finding that there was no notice and no right to self-help was against the manifest weight of the evidence and an err [*sic*] as a matter of law.

"4. The trial court erred and abused its discretion, to the prejudice of appellant, in awarding unreasonable attorneys fees to appellee[s] in the amount of $19,890, when appellant did not have sufficient opportunity to review a 19 page attorney fee statement which was produced on the date of trial.

"5. The trial court's [*sic*] erred and abused its discretion, to the prejudice of appellant, in awarding judgment to appellee for lost profits."

Appellees timely filed their cross-appeal, raising the following assignments:

"1. The trial court erred to the prejudice of defendants by denying defendants' motion for an award of attorneys' fees for frivolous conduct under § 2323.51.

"2. The trial court erred to the prejudice of defendants by denying them attorneys' fees for plaintiff's failure to admit.

"3. The trial court erred to the prejudice of defendants by not awarding reimbursements for utility payments.

"4. The trial court erred to the prejudice of defendants by not awarding future lost profits.

"5. The trial court erred to the prejudice of defendants in not awarding enhanced punitive damages."

appellees' injunction, fundamentally barred appellant's claim. Therefore, even though appellant dismissed its claims without prejudice, under the specific scenario of the instant action, all claims have been adjudicated, and the order is a final appealable order.

In the first assignment, appellant claims that the court erred by granting punitive damages, as appellees' cause of action, arising from a breach of contract theory, does not permit an award of punitive damages. Additionally, appellant claims that nothing in the record indicates it acted maliciously. We disagree.

While appellant is correct in noting that punitive damages are not recoverable in a breach of contract action, "when elements of the tort fraud are also proven and the plaintiff establishes that the [tortious conduct] * * * was egregious, punitive damages may be awarded." *Salgado v. Shoreway Circle, Inc.* (Dec. 9, 1994), Lake App. No. 93–L–071, unreported, at 4, 1994 WL 721854. Additionally, the Supreme Court of Ohio in *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 473, 575 N.E.2d 416, 419, noted:

"Punitive damages in this state are available upon a finding of actual malice.[6] 'Actual malice' for these purposes is '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.' (Emphasis *sic*.) *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus." (Footnote renumbered.)

In *Meacham v. Miller* (1992), 79 Ohio App.3d 35, 606 N.E.2d 996, the court held that punitive damages could be awarded in a property action:

"[A] party may receive compensatory and punitive damages for conversion of his property. * * *

"If the acts complained of are wanton or otherwise aggravated, the court may award punitive damages * * * A tenant may recover punitive damages if he can prove fraud, insult, or malice, in addition to actual damages resulting from a landlord's behavior." (Citations omitted.) *Id.* at 40, 606 N.E.2d at 999.

The evidence in the record is more than sufficient to permit the trier of fact to conclude that appellant's deeds were of the nature as those described in *Salgado, Calmes* and *Meacham* so as to permit an award of punitive damages. Specifically, appellant resorted to these self-help remedies against the recommendation of counsel, and elected to ignore the proper avenues of dispute resolution in spite of legal counsel to the contrary and a prior judicial determination requiring proper notice. It did so knowingly and fully aware of the potential consequences of its actions. Additionally, the referee concluded appellant's motivation for doing so was to compel appellees to terminate the lease or to obtain a more favorable rental agreement. These actions are clearly indicative of

---

**6.** "Actual malice as it pertains to punitive damages is different from actual malice in a defamation case. *Varanese v. Gall* (1988), 35 Ohio St.3d 78, 79–80, 518 N.E.2d 1177, 1180."

malicious intent, thereby permitting the imposition of the monetary sanctions levied by the trial court.

In addition, contrary to appellant's assertion that a conversion count was not before the court, appellees' counterclaim did allege that cause of action to permit an award of punitive damages under *Meacham.* Paragraph thirteen of the counterclaim states, "[Appellant] disabled [appellees'] theater business by *stealing* various projection equipment." (Emphasis added.) Further, paragraph sixteen avers in part: "[Appellant] *has used and continues to use* [appellees'] property and equipment, including projections, screens, concession stand and inventory. [Appellant] *has stolen* the petty cash from [appellees] that was located on the premises, as well." (Emphasis added.)

This claim for relief was placed in issue during appellees' evidential presentation of their counterclaim. The referee also concluded that appellant "either expressly or impliedly consented to the amendment of the counterclaim to conform to the evidence" because it did not interpose an objection. Under Civ.R. 15(B), the court may permit an amendment to the pleadings at any time, and if a party expressly or impliedly consents, the issues "shall be treated in all respects as if they had been raised in the pleadings, * * * [and the] [f]ailure to amend * * * does not affect the result of the trial of these issues." Based upon this evidence and the referee's legal conclusion, the trial court correctly awarded damages stemming from appellant's conversion. Appellant's first assignment is overruled.

In the second assignment or error, appellant alleges that the trial court's conclusion that the percentage rent was not due until twenty-two months after the close of the calendar year was erroneous. Specifically, appellant urges that the court should have interpreted the lease agreement so as to require appellees to submit the percentage rent along with the accounting statement they were obligated to provide to appellant within sixty days after the close of the calendar year.

In this action, the agreement does not delineate when appellees were required to make payment based upon the accounting. It only requires appellees to submit their *accounting* to appellant within sixty days of the end of the lease year. Since the contract does not specify a date on which appellees were required to perform, *i.e.,* tender payment based upon the accounting, contract law requires that performance be completed within a "reasonable time." *Harris v. Ohio Oil Co.* (1897), 57 Ohio St. 118, 127, 48 N.E. 502, 505. To determine what is "reasonable," the court must examine the surrounding conditions and circumstances underlying the execution of the contract. We cannot say, as a matter of law, that the trial court erred in concluding that two years was not unreasonable. Appellant had two years from the close of the lease year to scrutinize appellees'

submission and to challenge the accounting, and the court could determine appellees should be afforded the same amount of time to perform their bookkeeping task. The second assignment is without merit.

In the third assignment, appellant takes issue with the referee's conclusion that appellant failed to notify appellees before it resorted to self-help.

■ The lease requires that appellant provide written notice of alleged breaches to appellees. Appellees then would have thirty days from the notification to cure any default. At trial, appellant's representative testified that he was aware of this requirement, but admitted that he did not send notice to appellees prior to the lockouts. He claimed that he was under the impression that appellees were on notice as a result of a prior suit wherein the court ordered appellees to comply with the terms of the agreement. This supposition was erroneous.

This court is unable to locate any authority to support appellant's proposition. Therefore, we conclude that notice of one alleged breach does not equate with notice for subsequent breaches. Appellant was obligated to first notify appellees of each alleged breach before resorting to the remedy which it pursued. Appellant's third assignment is overruled.

■ In the fourth assignment, appellant takes issue with the decision to award attorney fees without affording appellant the opportunity to review appellees' evidential submission on the issue. At the hearing, appellees submitted a detailed invoice concerning the bills they had incurred. Appellant objected, claiming that it had not been provided with a copy of this submission prior to the hearing. We do not perceive any error.

The trial court, in its first entry, noted that it would entertain appellees' request for attorney fees at the subsequent hearing. In the intervening three months between the hearings, appellant did not endeavor to ascertain the extent of the claim through appropriate discovery. Its failure to do so precludes it from complaining to this court of its inability to challenge appellees' submissions.

Appellees submitted a detailed billing statement to the referee for review. The witness was then subjected to cross-examination by appellant's counsel. The witness noted that some of the billings were duplicative and, therefore, not included in the submission before the court. Finally, the witness explained that the matter was rather complicated as it involved temporary restraining orders and preliminary and permanent injunctions, which required a substantial amount of preparation. Appellant did not challenge the reasonableness of the billings. From this material, the court had before it evidence upon which it could base an award. This assignment is without merit.

█ In the fifth assignment, appellant challenges the materials prepared by appellees' witness concerning their lost profits. Initially, it should be noted that the witness prepared a statement reflecting appellees' profit history. This exhibit was admitted without objection. Therefore, since appellant failed to timely raise its objection, this issue, which could have been addressed if brought to the attention of the trial court, is waived. *State v. Campbell* (1994), 69 Ohio St.3d 38, 40, 630 N.E.2d 339, 344; *Mastronicola v. Frey* (July 21, 1995), Geauga App. No. 94–G–1893, unreported, 1995 WL 453141.

Notwithstanding this, appellees' witness delineated his credentials to the court, including his business and educational background. He then presented his conclusions as to the actual damages sustained. He provided a detailed explanation of how he arrived at the figures. It was documented and, therefore, not so speculative as to be inadmissible and to preclude an award of lost profits. *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.* (1984), 12 Ohio St.3d 241, 243, 12 OBR 322, 324–325, 466 N.E.2d 883, 886–887. Additionally, the credibility afforded to this witness with respect to his calculations based upon his education and experience is for the trial court. See *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178; *State v. Schlee* (Dec. 23, 1994), Lake App. No. 93–L–082, unreported, 1994 WL 738452. Therefore, this court will not reverse the trial court's award. The fifth assignment is without merit, and the trial court's judgment as to appellant's appeal shall be affirmed.

Appellees list five assignments of error in their cross-appeal. However, the first two are, in actuality, more in the nature of cross-assignments. Appellees, in these assignments, are requesting that this court affirm the trial court's award of attorney fees but for different reasons. Appellees are defending the trial court's judgment based upon alternative theories or "ground[s] rejected or raised but not considered by the trial court." Committee Comment to App.R. 3. Therefore, appellees' first two assigned errors will be treated as cross-assignments, and since this court, by rejecting appellant's assignments of error and affirming the award of attorney fees, has upheld the lower court's award of fees, we need not address these two cross-assignments. App.R. 12(A)(1)(c); *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph eight of the syllabus.

█ In the third assignment, appellees seek reimbursement for utility bills. Appellees' business is located in a large building which also houses other business and residential units. Appellees pay all of the utility bills and then are accorded an offset or reimbursement from appellant in the amount of forty-five percent of the total utility bills. Appellees presented testimony that they had incurred

$14,615.07 in reimbursable bills.[7] Appellant had not made payment or reimbursed appellees for these bills. However, the referee denied the claim, concluding, "The claim for reimbursement for utilities was not supported by canceled checks or paid utility invoices. The [appellees'] bare breakdown is not enough to support a judgment."

This is an incorrect statement of law. Appellees have submitted unrefuted testimony that if believed could establish appellees' entitlement to the utility bills. The court is free to believe or disbelieve the witness's testimony on this issue and award damages accordingly. *Bechtol; Schlee.* However, to state that appellees had failed to sustain their burden of proof because they did not submit any documentation to support the witness's testimony is erroneous. The testimony of the witness was sufficient to overcome appellees' evidentiary burden on this issue. Appellees' third assignment of error is sustained.

■ In the fourth assignment, appellees allege that the court erred by not awarding future lost profits. As appellant correctly notes, compensatory damages may not be awarded if they are speculative. *Charles R. Combs Trucking, Inc., supra,* 12 Ohio St.3d at 243, 12 OBR at 324–325, 466 N.E.2d at 886–887. Appellees' witness did testify concerning the profit lost as a result of the loss of return patrons. However, appellant adduced testimony that "loyalty" or return customer business did not apply in the movie industry. The witness stated that the movie clientele would not visit a particular theater based upon loyalty to the cinema, but rather to see the specific movie. Therefore, there was evidence before the court which not only created speculation as to the amount of lost future profits but also challenged the basis of appellees' alleged damages. The court was within its discretion to award whatever weight it willed to this testimony in arriving at its damages figure. This assignment is overruled.

■ In the fifth assignment, appellees claim that they are entitled to more punitive damages. The amount of damages awarded is left to the discretion of the finder of fact. "The determination of the amount of punitive damages is within the discretion of the trier of fact as long as the award is not based upon passion and prejudice." *Meacham, supra,* 79 Ohio App.3d at 40, 606 N.E.2d at 999. Furthermore, appellees have not offered any authority to support their proposition that this court should remand the matter to increase punitive damages, nor have we been able to locate any authority in this jurisdiction for ordering a new trial on the issue of additur of punitive damages. This assigned error is without merit.

---

7. Appellees seek $2,117.89 for utilities paid in 1993, $4,436.84 for 1992, $3,004.14 and $5,056.20 for trash removal for the years 1981 through 1988.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

JOSEPH E. MAHONEY and NADER, JJ., concur.