DECISION
This is an appeal by plaintiff, Bret A. Adams, from a judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of defendant, LCI International Telecom Corporation ("LCI").
On August 3, 1998, plaintiff filed a complaint against LCI, alleging that plaintiff and LCI executed a "Sales Lead Agent Agreement ("agreement"), effective December 31, 1996. The complaint alleged that, under the terms of the agreement, plaintiff was obligated to use his "best efforts" to supply leads to LCI for business customers and organizations with the potential for group residential sales; in return, LCI was obligated to pay plaintiff commissions for business generated from leads supplied by plaintiff according to formulas spelled out in the agreement. Plaintiff's complaint set forth five separate claims for relief, including a claim that LCI breached the agreement by failing to make reasonable efforts to develop leads supplied by plaintiff and to generate sales that would result in the payment of commissions to plaintiff under the agreement.
On June 3, 1999, LCI filed a motion for summary judgment. Plaintiff subsequently filed a memorandum contra LCI's motion for summary judgment.
On August 25, 1999, the trial court filed a decision granting in part and denying in part LCI's motion for summary judgment. Specifically, the court granted summary judgment in favor of LCI as to plaintiff's first, second, third and fifth claims for relief, but denied LCI's motion for summary judgment as to plaintiff's fourth claim for relief. The decision of the trial court was journalized by judgment entry filed September 21, 1999. On September 22, 1999, plaintiff filed, pursuant to Civ.R. 41(A)(1), a notice of dismissal as to the fourth claim for relief.
On appeal, plaintiff sets forth the following single assignment of error for review:
 The trial court erred in granting LCI's motion for summary judgment with respect to the breach of contract claim.
The sole issue raised by plaintiff on appeal is whether the trial court erred in granting summary judgment in favor of LCI on plaintiff's breach of contract claim. Specifically, plaintiff maintains that LCI breached the agreement between the parties by not fulfilling its good faith obligation to make reasonable efforts to generate sales from the sales leads provided by plaintiff.
In general, a motion for summary judgment will be granted only where there is no genuine issue of any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Further, summary judgment shall not be granted unless it appears from the evidence that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Id.
In considering the language of a written agreement, the primary objective of a court is to "ascertain and give effect to the intent of the parties." Foster Wheeler Enviresponses, Inc. v.Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353,361, citing Aultman Hosp. Assn. v. Community Mut. Ins. Co.
(1989), 46 Ohio St.3d 51, 53. Thus, "'[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" Foster Wheeler, supra, at 361, quoting Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130. InAultman, the Ohio Supreme Court held that where parties, "following negotiations, make mutual promises which thereafter are integrated into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions." Aultman, supra, at 53.
In his complaint, plaintiff alleged that the agreement at issue included an "implied requirement that LCI make reasonable efforts to develop leads provided by [plaintiff] and to generate sales of LCI services that would result in the payment of commissions to [plaintiff] under the Agreement." Plaintiff contends on appeal that the trial court erred by refusing to imply a good-faith obligation on the part of LCI to use reasonable efforts to promote sales.
Paragraph seven of the agreement, titled "Lead Acceptance," states as follows:
 Sales Lead Agent expressly acknowledges that any submission of Leads for the LCI Services will be subject to LCI's acceptance, in its sole discretion, of such Leads and that LCI will have no responsibility or liability whatsoever to Sales Lead Agent with respect to the continued availability or operation of the Services or LCI's acceptance, failure to accept, or follow up of Leads submitted by Sales Lead Agent.
In the present case, the trial court, in considering the entire agreement, concluded that there was no language contained therein expressly requiring LCI to use reasonable efforts to develop or follow up sales leads. Rather, the court found that the language of paragraph seven, providing that "LCI will have no responsibility or liability whatsoever to Sales Lead Agent with respect to * * * LCI's acceptance, failure to accept, or follow up of Leads submitted by Sales Lead Agent," expressly and unambiguously indicated that LCI had no such obligation.
Upon review of the agreement, and construing its applicable provisions, we agree with the trial court's determination. Here, any implied good faith obligation on the part of LCI to follow up on leads submitted by plaintiff would conflict with the express terms of the agreement negotiated by the parties specifically relieving LCI of such a responsibility. While we recognize that contracts may be subjected to an implied duty of good faith, we decline to hold that such duty may be used to create an obligation that is inconsistent with the express terms of the agreement. See, e.g., Cohn v. Taco Bell Corp. (Jan. 14, 1994), N.D.Ill. No. 92 C 5852, unreported ("express provisions of a contract may grant the right to engage in conduct which would otherwise have been forbidden by the implied covenant of good faith."); Flight Concepts Ltd. Partnership v. Boeing Co.
(D.Kan. 1993), 819 F. Supp. 1535, 1552 (manufacturer had no implied duty to sell, market or promote airplane; "[t]he implication of a covenant to use best efforts would be inconsistent with the agreement reached by the parties" expressly excluding such an obligation).
We note that, in addition to the language set forth in paragraph seven of the agreement, paragraph eighteen contains an "entire agreement" clause, which provides as follows:
Controlling Law and Entire Agreement.
 This Agreement, with Exhibits, will be governed by the domestic laws of the State of Ohio; constitutes the entire Agreement between Sales Lead Agent and LCI with respect to the subject matter hereof; supersedes all prior agreements and representations, written or oral, concerning the subject matter herein, including, but not limited to the Authorized Lead Agent Agreement dated January 31, 1996. This Agreement cannot be changed or modified except by written amendment signed by Sales Lead Agent and LCI.
The existence of the merger clause in the agreement at issue "further undermines * * * [plaintiff's] attempt to rely on any implied obligations." Beraha, M.D. v. Baxter Health Care Corp.
(C.A.7, 1992), 956 F.2d 1436, 1442.
In support of his position, plaintiff relies uponIllinois Controls, Inc. v. Langham (1994), 70 Ohio St.3d 512. In that case, the Ohio Supreme Court held that "[a] contractual provision which gives a party the exclusive right to market a product on behalf of another imposes upon that party a duty to employ reasonable efforts to generate sales of the product." Id.
at paragraph one of the syllabus. Upon review, we find IllinoisControls to be distinguishable from the instant action. Even assuming, arguendo, the existence of a dispute whether the agreement between plaintiff and LCI involves exclusive marketing rights, there is no indication that the agreement in IllinoisControls contained express language similar to paragraph seven of the agreement at issue, explicitly limiting LCI's obligation regarding the follow up of leads. We agree with LCI's contention that, because the agreement contains express terms disclaiming "any responsibility or liability whatsoever" by LCI to pursue leads, the holding in Aultman negates the applicability ofIllinois Controls to the facts of this case. See, also, FlightsConcepts, supra, at 1552 ("In all of the cases in which the courts have implied a covenant to use best efforts, the contracts involved failed to contain any express language concerning performance of the contract").
Finally, plaintiff contends that the "follow up" language of paragraph seven in the agreement is ambiguous, and refers only to LCI's obligations in evaluating leads before they are accepted. As noted by LCI, plaintiff did not raise this argument in opposition to the summary judgment motion. LCI cites case law for the proposition that an appellate court should not reverse the court's granting of summary judgment on grounds raised for the first time on appeal. We find, however, as a matter of law, that the language of the agreement stating that LCI will have "no responsibility or liability whatsoever" with respect to its acceptance, failure to accept, or "follow up" leads submitted by the sales lead agent, is not ambiguous. The phrase "follow up" is defined as "to pursue in an effort to take further action." Webster's Ninth New Collegiate Dictionary (1991) 480. Giving the words of the agreement their plain and ordinary meaning, we read the language of paragraph seven as relieving LCI of any liability or responsibility "whatsoever" regarding its failure to pursue leads. Finding the provision to be free of ambiguity, we decline plaintiff's invitation to resort to extrinsic evidence to give effect to the parties' intentions. Shifrin v. Forest City Ent.,Inc. (1992), 64 Ohio St.3d 635, 638. See, also, Whitley v. CantonCity School Dist. Bd. of Edn. (1988), 38 Ohio St.3d 300, 301
("where the terms of a contract are clear and unambiguous, extrinsic evidence may not be used as an aid in interpretation"). Further, where a contract is plain and unambiguous, "it does not become ambiguous by reason of the fact that in its operation it may work a hardship upon one of the parties." Aultman, supra, at 55.
Based upon the foregoing, the trial court did not err in granting summary judgment in favor of LCI on plaintiff's breach of contract claim, and plaintiff's single assignment of error is overruled. Accordingly, having overruled plaintiff's assignment of error, the judgment of the trial court is hereby affirmed.
TYACK and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.