DECISION AND JUDGMENT ENTRY
This is an appeal from a Highland County Common Pleas Court summary judgment that granted, in part, and denied, in part, the summary judgment motions filed by the Greenfield Exempted Village School District Board of Education, defendant below and appellee/cross-appellant herein, and Thomas Gibbs, plaintiff below and appellant herein.
Appellant raises the following assignments of error:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE CONTRACT BETWEEN MR. GIBBS AND THE BOARD WAS NOT BINDING."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY FAILING TO FIND THAT MR. GIBBS WAS ENTITLED TO STATUTORY DUE PROCESS UNDER R.C. 3319.36
AND THE OHIO SUPREME COURT'S HOLDING IN WHITLEY V. CANTON CITY SCHOOL DISTRICT BOARD OF ED."
Appellee/cross-appellant raises the following assignment of error:
 "THE TRIAL COURT ERRED IN DENYING THE COUNTERCLAIM OF THE GREENFIELD EXEMPTED VILLAGE SCHOOL DISTRICT BOARD OF EDUCATION TO RECOVER WAGES PAID TO PLAINTIFF BEYOND THE STATUTORILY PERMITTED TWO-MONTH TIME PERIOD."
The parties do not dispute the facts relevant to the instant appeal. On July 30, 1998, appellee and appellant entered into a written contract in which the parties agreed that appellant would serve as a school district administrator, specifically a "Middle School [Assistant] Principal/[Assistant] Athletic Director," for two years effective August 1, 1998. Following the parties' signatures, the contract contained the following clause: "It is understood that the administrator qualify for a valid certificate before the above contract is binding."
As of July 30, 1998, appellant possessed a provisional elementary teaching certificate valid for teaching grades one through eight. Appellant had not, however, received a principal certification from the State Board of Education. Appellant apparently expected to receive certification without incident.
After two months of appellant's employment as administrator had passed, Superintendent Phillip Cornett still had not received evidence of appellant's certification. Throughout the next several months, Cornett questioned appellant as to why he had not received the certificate and "each time he had an excuse as to why he did not receive it."
By letter dated January 19, 1999, the State Board of Education (Board) advised appellant that it had passed a resolution declaring its intention to deny his pending application for principal certification. The Board noted that appellant had a 1995 disorderly conduct conviction and a 1996 unauthorized use of property conviction.
Cornett subsequently became aware of the Board's intent to deny appellant's application. Cornett asked appellant why the Board intended to take this action and appellant replied that "it was due to shoplifting a pair of speedos."
Cornett then contacted a Board member and learned that appellant had two criminal convictions. The Board member advised Cornett that he did not know when appellant would receive a principal certificate and that a possibility existed that appellant might not receive a principal certificate.
Cornett considered placing appellant on a leave of absence but ultimately decided to declare appellant's contract null and void, as of February 3, 1999, due to appellant's failure to qualify for a certificate. To that end, Cornett advised appellant via written letter that appellant's "services for the position of Assistant Middle School/Elementary Principal/Assistant Athletic Director, are hereby null and void. As of this date, you have not fulfilled the requirements under O.R.C. 3319 for proper principal's certification."
In August of 1999, appellant and the Board entered into a "consent agreement." Under the agreement (1) the Board suspended appellant's current four-year elementary teaching certificate for four months; (2) after the expiration of the four months, the Board issued appellant a new four-year provisional principal certificate; and (3) appellant completed sixty hours of community service. On September 16, 1999, the Board issued appellant a principal certificate valid "July 1, 1998 thru June 30, 2002."
On December 21, 1999, appellant filed a complaint against appellee and asserted that: (1) appellee violated his due process rights by failing to provide appellant with a hearing; (2) appellee breached the contract by terminating appellant without cause; and (3) the doctrine of promissory estoppel applied to prevent appellee from claiming the non-existence of the contract.
On January 31, 2000, appellee filed an answer and counterclaim. Appellee denied that it deprived appellant of due process or that it breached the contract. Rather, appellee asserted that appellant's contract "was void as a matter of law after the first two months of his initial employment." Appellee's counterclaim sought reimbursement of the funds it paid to appellant in violation of R.C. 3319.30.[1]
The parties subsequently filed cross-motions for summary judgment. On May 15, 2001, the trial court (1) granted appellee's summary judgment motion with respect to appellant's contract claim, (2) denied appellee's summary judgment motion with respect to its fund reimbursement claim, and (3) granted appellant's summary judgment motion with respect to appellee's fund reimbursement claim.
Appellant filed a timely notice of appeal and appellee filed a timely notice of cross-appeal.
 I
In his first and second assignments of error, appellant argues that the trial court erred by granting appellee summary judgment.[2]
Specifically, appellant asserts that the trial court erred by determining that: (1) the contract between appellant and appellee was not binding; (2) the procedures set forth in R.C. 3319.36 regarding termination of teachers did not apply to appellant; and (3) Whitley v. Canton CitySchool Dist. Bd. of Ed. (1988), 38 Ohio St.3d 300, 528 N.E.2d 167, did not control the trial court's resolution of appellant's claims.
Appellee claims that the trial court properly granted summary judgment with respect to appellant's complaint because the contract was not binding. Appellee notes that the contract was not binding because the contract specified that appellant would "qualify for a certificate before the contract" would become binding. Appellee further argues that the trial court did not err by determining that appellant was not entitled to the statutory due process rights contained in R.C. 3319.16. Appellee contends that because the contract never became binding, appellant was not a "teacher" and thus, R.C. 3319.16, which applies to "teachers," did not provide appellant with due process protections.
We initially note that when reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts ade novo review. See, e.g., Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241, 245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See, e.g., Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157; Morehead v. Conley
(1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786, 788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164, 1171.
In the case at bar, we agree with the trial court that no genuine issues of material fact remain regarding appellant's claims for relief and that appellee is entitled to judgment as a matter of law.
The interpretation of a clear and unambiguous contract is a matter of law. See, e.g., Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. In interpreting a clear and unambiguous contract, the contract "`must be considered and construed as a whole, taking it by the four corners as it were, and giving effect to every part * * *.'" Chan v. Miami Univ. (1995), 73 Ohio St.3d 52, 57, 652 N.E.2d 644, 648 (quoting Brown v.Fowler (1902), 65 Ohio St. 507, 523, 63 N.E. 76, 78).
In the case at bar, the contract clearly specifies that appellant must qualify for a valid certificate before the contract becomes binding. The contract included a provision stating: "It is understood that the administrator qualify for a valid certificate before the above contract is binding."
"[T]he term `qualified' has been defined by the legislature to mean qualified by certification by the State Board of Education." Fisler v.Mayfield City Sch. Dist. Bd. of Educ. (Oct. 31, 1985), Cuyahoga App. No. 49548, unreported; see, also, Anderson v. Wolf (1940), 32 Ohio L. Abs. 193 (stating that the "spirit" of the teacher certification provisions "is to assure that a teacher shall be fully qualified" and that "[t]he certificate is the authenticated evidence of that fact"). A teacher who is not "qualified" is not entitled to employment beyond the two-month safe harbor provision contained in R.C. 3319.36(C)(1).[3] See Comminskyv. Tallman (Dec. 20, 1979), Cuyahoga App. No. 39878, unreported (stating that a school had no obligation to employ a teacher as a part-time assistant principal when the teacher lacked the proper certification);Beatley v. Indian Lake Loc. Bd. of Educ. (Nov. 16, 1979), Logan App. No. 8-79-2, unreported (stating that a written teacher contract "can have no viability without" the occurrence of certain conditions precedent, such as "proper certification"); Baker, Ohio School Law (2001), Section 7.02, 309. As Baker's treatise notes:
 "If a teacher does not hold a license qualifying him to teach a subject actually being offered as a part of the school curriculum, the board of education has no obligation to continue that teacher in its employment. * * * * Likewise, a teacher who has allowed his license to lapse is no longer a `teacher' and has no right to continued employment in the district irrespective of his contract status."
Id. (footnotes omitted).
For example, in Antram v. Jonathan Alder Loc. Sch. Dist. (Feb. 16, 1993), Madison App. CA92-08-021, unreported, Antram was a teacher hired as a certified vocational-agricultural ("VO-AG") teacher for the 1986-1987 school year. Antram's contract was not renewed, however, because the school eliminated the VO-AG program.
In the summer of 1987, the superintendent offered Antram a one-year contract for a half-time learning disability ("LD") tutor position for the 1987-1988 school year. Antram agreed and signed a "Teacher's Contract." At that time, Antram was certified in VO-AG and elementary education, but not in LD. Antram subsequently received temporary LD certification, contingent upon completing the course work required to obtain a permanent LD certificate.
In the spring of 1989, Antram received a three-year limited contract for the school year beginning in 1989. Antram added the notation: "I will serve this school in the capacity selected by the Administrator (½ time LD), but I still consider myself available for a full-time position."
In the spring of 1989, Antram had completed only three of the required courses needed to obtain the LD certificate. He, received, however, a third temporary LD certificate. To obtain the third temporary certification, he had provided a letter from Ashland College stating that he intended to register for classes in the fall. He did not register for fall classes.
In late summer of 1990, Antram advised the superintendent that he had not completed the course work and asked for help in obtaining a fourth temporary certificate. The board refused to issue a fourth temporary certificate. The school terminated Antram's contract stating that it could not continue to employ a teacher who lacked proper certification.
Antram appealed his termination and argued that (1) the school wrongly terminated his contract because it was a three-year teaching contract; and (2) and he was certified to teach elementary education. Antram asserted that his failure to obtain a LD certification was irrelevant. The appellate court disagreed, however, stating that a school district does not have a duty to continue employment of one who lacks proper certification for the position for which the teacher was hired.
Like Antram, in the case at bar appellant failed to qualify for or obtain proper certification. Thus, like the school district in Antram, appellee had no obligation to continue appellant's employment when appellant lacked the certification needed for the position for which he was hired.
Moreover, we note that appellant did not "qualify" for a valid certificate, as the contract specified, until the Board issued his principal certificate on September 16, 1999. See Fisler, supra (stating that the term "qualified" means evidence of certification). Appellant did not receive evidence of certification until September 16, 1999. Thus, because appellant failed to "qualify" for a valid certificate, we agree with the trial court's conclusion that the contract was not binding and that appellee was not obligated to continue appellant's employment. The plain meaning of the provision in the contract specifying that appellant qualify for a valid certificate is that neither appellee nor appellant incurred any obligation under the contract unless and until appellant qualified for a valid certificate.
Appellant asserts that he did eventually "qualify" for a valid certificate and, because the contract did not specify when he must "qualify" for a valid certificate, he fulfilled the contract's condition. Thus, appellant reasons that appellee breached the contract. We note, however, that "when no time is fixed for the performance of a contract, a reasonable time is implied." Harris v. Ohio Oil Co. (1897),57 Ohio St. 118, 127, 48 N.E. 502, 505; see, also, Stern Enterprises v.Plaza Theaters I and II, Inc. (1995), 105 Ohio App.3d 601, 607,664 N.E.2d 981, 985; Ross v. Reeves (Sept. 1, 1999), Wayne App. Nos. 98 CA 9 and 10, unreported. We do not believe that performance that occurs well over one year after the signing of the contract constitutes a reasonable time.
We further disagree with appellant's argument that appellee "waived" the contract condition that appellant "qualify" for a valid certificate before the contract would become binding. Appellant claims that because appellee did not immediately enforce the qualification provision of the contract, appellee effectively waived the condition. The record reveals, however, that Cornett, on several occasions questioned appellant about his failure to present a valid principal certificate and that each time, appellant had an excuse. Cornett simply gave appellant the benefit of the doubt that the Board would eventually issue a principal certificate to appellant in a timely manner. Once Cornett learned that the Board intended to deny appellant's certificate, Cornett then sought to enforce the contract provision. We do not believe that appellee, under the facts and circumstances present in the case sub judice, waived its right to enforce the contract provision.
Moreover, we disagree with appellant's argument that Whitley v. CantonCity Sch. Dist. (1988), 38 Ohio St.3d 300, 528 N.E.2d 167, requires, in all circumstances, a certificate to be considered valid as of the effective date noted on the certificate. In Whitley, the Ohio Supreme Court held:
 "Where a contractual dispute arises between a school board and a teacher regarding the date of the teacher's certification, the teacher will be considered certified on the date the certificate issued by the Ohio Department of Education became effective unless the contract specifically provides to the contrary."
Id., paragraph two of the syllabus.
Whitley differs from the case at bar in several respects. First, little doubt existed that Whitley would receive proper certification. Second, Whitley did, in fact, receive proper certification within a reasonable time and shortly after the start of the school year. Third, the Board did not suspend Whitley's certificate. Fourth, the Board did not indicate an intention to refuse to issue a certificate. Under the foregoing circumstances, the Ohio Supreme Court concluded that it would be irrational to hold that Whitley was not certified until the date the State Board of Education actually issued the certificate. Instead, the court sanctioned the Board's practice of making "all certificates effective on July 1 irrespective of the date of issuance." Id.,38 Ohio St.3d at 302, 528 N.E.2d at 170.
In the case at bar, unlike Whitley, (1) appellant did not receive proper certification shortly after the start of the school year (and thus, not within a reasonable time), (2) appellant's elementary teaching certificate was suspended, (3) the Board indicated its intention to deny appellant a principal certification, and (4) the Board did not issue appellant a certificate until September 16, 1999,[4] after appellant's four-month suspension expired and over one year after appellant's employment with appellee initially began. It makes little sense to applyWhitley to the case at bar and hold that appellant became "certified" as a principal on July 1, 1998 for four years, even though during that time period the Board refused to issue a principal certificate and suspended appellant's current certificate.
Moreover, as we discussed above, the contract specified that appellant "qualify" for a valid certificate before the contract became binding. As we previously stated, appellant did not "qualify" for a valid certificate within a reasonable time.
We next consider appellant's claim that he was deprived of the statutory due process protections contained in R.C. 3319.26. In Bixby v.Board of Educ. of the Lorain Cty. Joint Vocational Sch. Dist. (Dec. 11, 1985), Lorain App. No. 3895, unreported, the court considered a similar argument. In Bixby the teacher (1) did not hold "an effective teaching certificate"; (2) had been employed under a three-year limited teaching contract set to expire in 1986; and (3) possessed a provisional teaching certificate that expired on June 30, 1984. Before the certificate expired, the teacher applied for a renewal with the school superintendent. The superintendent refused to sign the renewal, however, due to pending sex charges against the teacher. On August 20, 1984, the Board of Education notified the teacher that his services were no longer required. The teacher asked for reinstatement and claimed that he was entitled to a pre-termination hearing under R.C. 3319.16. The court of appeals disagreed, stating that R.C. 3319.16 applies to "teachers" and that Bixby, who as of the date the Board informed him that his services were no longer required, did not hold a teaching certificate. Thus,Bixby was not a "teacher" — a person certified to teach.
We agree with the Bixby court's reasoning. In the case at bar, appellant lacked proper certification for the position for which he was hired. Thus, like the teacher in Bixby, appellant was not entitled to the R.C. 3319.16 due process protections.
Accordingly, based upon the foregoing reasons, we overrule appellant's first and second assignments of error.
 II
In its cross-assignment of error, appellee (cross-appellant) argues that the trial court erred by granting appellant summary judgment with respect to appellee's claim for reimbursement of the salary it paid to appellant in violation of R.C. 3319.36(D). Appellee asserts that the trial court erroneously concluded that R.C. 117.28 provides the only method by which a school district may seek reimbursement of improper expenditures. We agree with appellee.
R.C. 117.28 provides as follows:
 Where an audit report sets forth that any public money has been illegally expended, or that any public money collected has not been accounted for, or that any public money due has not been collected, or that any public property has been converted or misappropriated, the officer receiving the certified copy of the report pursuant to section 117.27 of the Revised Code may, within one hundred twenty days after receiving the report, institute civil action in the proper court in the name of the public office to which the public money is due or the public property belongs for the recovery of the money or property and prosecute the action to final determination.
 The auditor of state shall notify the attorney general in writing of every audit report which sets forth that any public money has been illegally expended, or that any public money collected has not been accounted for, or that any public money due has not been collected, or that any public property has been converted or misappropriated and of the date that the report was filed.
 Within one hundred twenty days after receiving the certified copy of the report, the officer receiving the report shall notify the attorney general in writing of whether any legal action has been taken. If no legal action has been taken, the officer shall, within the same period, notify the attorney general in writing of the reason why legal action has not been taken. The attorney general or his assistant may appear in any such action on behalf of the public office and may, either in conjunction with or independent of the officer receiving the report, prosecute an action to final determination. The attorney general may bring the action in any case where the officer fails to do so within one hundred twenty days after the audit report has been filed.
R.C. 117.28 is a remedial statute that should be construed liberally in order to effect its purpose. State ex rel. Holcomb v. Walton (1990),66 Ohio App.3d 751, 756, 586 N.E.2d 176, 179. The purpose of R.C. 117.28
is "`to protect and safeguard public property and public moneys.'" Id. (quoting Portage Lakes Joint Voc. Sch. Dist. Bd. v. Bowman (1984),14 Ohio App.3d 132, 135, 470 N.E.2d 233, 236, and State ex rel. Smith,v. Maharry (1918), 97 Ohio St. 272, 276, 119 N.E. 822, 823).
This court has previously stated that R.C. 117.28 does not appear to provide the only means by which a board of education may recover funds. See Green Local Teachers Assn. V. Blevins (1987), 43 Ohio App.3d 71, 74,539 N.E.2d 653, 657. Thus, based upon our prior holding, and considering that R.C. 117.28 is to be liberally construed in order to protect and safeguard public moneys, we agree with appellee that R.C. 117.28 is not the only means by which a school district may recover improper expenditures. We therefore agree with appellee that the trial court erred by granting appellant summary judgment with respect to appellee's counterclaim.
Accordingly, based upon the foregoing reasons, we sustain appellee's cross-assignment of error and, to this limited extent, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion. In all other respects, we hereby affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion. Appellee shall recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. Evans, J.: Concur in Judgment Opinion.
[1] R.C. Chapter 3319 prohibits payment, beyond a two-month period, to a "teacher" (a "teacher" includes a principal, see R.C. 3319.09(A)) who lacks proper certification. See R.C. 3319.30 and 3319.36(C)(1).
[2] We note that appellant did not separately argue his assignments of error as App.R. 16(A) requires. App.R. 12(A)(2) permits an appellate court to "disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately." We will nevertheless consider appellant's two assignments of error.
We further recognize that appellant, in his "statement of facts," appears to raise several additional reasons why the trial court erred by granting appellee summary judgment. To the extent appellant did not properly present these apparent arguments as assignments of error or as arguments in support of his assignments of error, we decline to address them. See App.R. 16(A)(6) and (7); App.R. 12(A)(1)(b) (stating that a court of appeals shall "[d]etermine the appeal on its merits on theassignments of error") (emphasis added).
[3] 3319.36 provides:
 (A) No treasurer of a board of education or educational service center shall draw a check for the payment of a teacher for services until the teacher files with the treasurer both of the following:
 (1) Such reports as are required by the state board of education, the school district board of education, or the superintendent of schools;
 (2) Except for a teacher who is engaged pursuant to section 3319.301 [3319.30.1] of the Revised Code and except as provided under division (B) of this section, a written statement from the city or exempted village district superintendent or the educational service center superintendent that the teacher has filed with the treasurer a legal educator license or internship certificate, or true copy of it, to teach the subjects or grades taught, with the dates of its validity. The state board of education shall prescribe the record and administration for such filing of educator licenses and internship certificates in educational service centers.
* * * *
 (C) Notwithstanding division (A) of this section, the treasurer may pay either of the following:
 (1) Any teacher for services rendered during the first two months of the teacher's initial employment with the school district or educational service center, provided such teacher is the holder of a bachelor's degree or higher and has filed with the state board of education an application for the issuance of a provisional or professional educator license;
* * * *
[4] We note, as the Whitley court did, that the Board has a practice of making all certificates valid as of July 1 regardless of what date the certificate actually was issued. In the case at bar, the Board issued the certificate in September of 1999, but did not make appellant's certificate effective as of July 1, 1999. Instead, for reasons indiscernible from the record, the Board made appellant's certificate effective as of July 1, 1998.