[Cite as *K.D. v. Schneider*, 2017-Ohio-1502.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| K.D., A MINOR | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| SHANNON SCHNEIDER, ET AL. | : | Case No. 16-CA-27 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 2014CV773



JUDGMENT:                         Affirmed



DATE OF JUDGMENT:                 April 21, 2017



APPEARANCES:

For Plaintiff-Appellant                    For Defendants-Appellees

TERRY V. HUMMELL                           DAVID W. PRYOR
115 West Main Street                       471 East Broad Street
Suite 100                                  19th Floor
Columbus, OH  43215                        Columbus, OH  43215

*Wise, Earle, J.*

{¶ 1} Plaintiff-Appellant, K.D., a minor, appeals the June 27, 2016 entry of the Court of Common Pleas of Fairfield County, Ohio, granting summary judgment to Defendants-Appellees, Shannon Schneider and his son, Justin.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 23, 2013, appellant was operating an ATV owned by appellee Shannon Schneider when she crashed into a tree, sustaining injuries. At the time of the accident, appellant was on property belonging to appellee Shannon Schneider. Appellant and appellee Justin Schneider had just started dating.

{¶ 3} On November 12, 2014, appellant filed a complaint against appellees and Amanda Schneider, claiming they knowingly, willfully, wantonly, recklessly, negligently, and unlawfully entrusted the ATV vehicle to appellant and appellee Justin Schneider, failed to warn appellant of the dangers of operating an ATV, failed to properly instruct appellant on operating an ATV, failed to properly supervise appellant on the ATV, and failed to properly inspect the ATV and property to ensure the ATV could be operated in a safe manner.

{¶ 4} On August 20, 2015, appellant voluntarily dismissed Amanda from the case.

{¶ 5} On February 1, 2016, appellees filed a motion for summary judgment, claiming appellant was a recreational user on their property and therefore they were not liable for any of her injuries. Appellees also claimed appellant assumed the ordinary risk associated with operating an ATV, and they did not negligently entrust appellant with the ATV. Opposition and reply briefs were filed, as well as a motion to supplement the record

by appellant. By entry filed June 27, 2016, the trial court granted the motion to supplement the record, and granted summary judgment to appellees.

{¶ 6} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶ 7} "THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT."

{¶ 8} Appellant claims the trial court erred in granting summary judgment to appellees. We disagree.

{¶ 9} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211, 663 N.E.2d 639:

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶ 10} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

{¶ 11} As explained by this court in *Leech v. Schumaker,* 5th Dist. Richland No. 15CA56, 2015-Ohio-4444, ¶ 13:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party

fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

## NEGLIGENCE CLAIMS

{¶ 12} The parties agreed that appellant was a recreational user of the ATV. R.C. 1533.181 governs exception from liability to recreational users and states the following:

(A) No owner, lessee, or occupant of premises:

(1) Owes any duty to a recreational user to keep the premises safe for entry or use;

(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user.

(B) Division (A) of this section applies to the owner, lessee, or occupant of privately owned, nonresidential premises, whether or not the

premises are kept open for public use and whether or not the owner, lessee, or occupant denies entry to certain individuals.

{¶ 13} In *Marchetti v. Kalish,* 53 Ohio St.3d 95, syllabus, 559 N.E.2d 699 (1990), the Supreme Court of Ohio held: "Where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d."

{¶ 14} 2 Restatement of the Law 2d, Torts, Section 500 (1965) defines "reckless" as:

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

{¶ 15} 1 Restatement of the Law 2d, Torts, Section 8(A) (1965) defines "intentional" as: "The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."

{¶ 16} Appellees attached their affidavits to their motion for summary judgment filed February 1, 2016. Appellee Shannon Schneider averred the following in pertinent part:

3. My first requirement was that [K.] would have to get permission from her family first. [K.] called her grandmother and received permission to ride the ATV. I also required that everyone wear helmets and that [K.] receive full operating instructions. Amber and my son had prior experience operating the ATVs.

4. I went out with the three of them to the ATVs and personally instructed [K] [D] on how to use the brakes and throttle. I also witnessed Amber and Justin explain that to her as well.

5. As they were riding, I stood there and observed all of them for at least 15 minutes. At no time did I notice any erratic or improper operation by [K]. She always had someone on the back of her ATV with her as well.

{¶ 17} Appellee Justin Schneider averred the following in pertinent part:

3. My father required that [K] receive permission from her family, that we wear helmets, and that he come out to personally instruct [K] on the operation of an ATV if she was going to be a driver.

4. I also instructed [K] in how to operate the ATV.

5. Amber Sewell had a lot of experience operating an ATV and she also rode on the back with [K]. [K] operated the ATVs for quite a while and at no time did I observe her having any difficulty operating the ATV. She was able to steer, stop and accelerate properly.

7. [K] started going faster and went in a straight line for at least 100 yards and ran right into a tree. There was open field everywhere around her. She later told me that she was not paying attention to where she was going.

{¶ 18} In her affidavit attached to her memorandum in opposition filed March 15, 2016, appellant averred the following in pertinent part:

2. On April 23, 2013, I had recently turned age 16 and did not yet have a driver's license.

4. After we arrived, Justin asked me if I wanted to ride an ATV. I had never ridden an ATV before and it seemed like it would be fun, so I readily agreed. I had no idea of the risk of riding an ATV. It is my recollection that we did not seek or receive permission from Justin's father, Shannon Schneider, to ride the ATVs, but rather he came home after we started riding, but did not object to me riding the ATVs. I also have no recollection of Shannon Schneider providing me any instruction on the operation of the ATVs.

5. I did not seek permission to ride the ATV from my grandmother, with whom I was staying at the time, nor did I contact either of my parents, both of whom were in Virginia at that time. I am certain that all of them would have refused consent if I had asked. Neither my boyfriend, Justin Schneider, or his father, Shannon Schneider, requested that I obtain permission before riding the ATV.

6. For the first 30 minutes or so, I rode on the back of Justin's ATV as a passenger. Soon after we started riding, Justin's father, Shannon Schneider, came home. He told us to put on helmets. Shannon remained outside for most of the time we were riding ATVs.

7. About 30 minutes after we started riding, Justin spent about 30 seconds pointing out the controls for another ATV called a Grizzly 450. I did not grasp everything that he said in that short time. The only warning that I saw on the ATV prohibited drivers under the age of 16.

8. I then started to ride the Grizzly 450 on my own for a short time. Soon after that, Amber Sewell arrived. She was my age and she and her mother were staying with Shannon Schneider. She and her mother had been riding ATVs at Shannon's property for some time.

9. Amber and I started to ride the Grizzly 450 taking turns a (sic) driver and passenger. At no time, did Justin or his father, Shannon, suggest that riding the ATV with a passenger was a bad idea, so I assumed it was totally acceptable. I had no idea that operating an ATV with a passenger could be dangerous.

{¶ 19} In her supplemental facts filed April 19, 2016, appellant stated the following in pertinent part:

> Ms. [D] did not call her grandmother to ask permission to ride the ATVs, and she did not tell Justin Schneider that she did contact her grandmother. (27:2-7). Ms. [D] did not call her grandmother because she knew her grandmother would deny her permission. (27:18-22). However, she does not recall if Shannon Schneider required her to ask her grandmother for permission before riding. (28:16-21). Ms. [D] states there was no reason the Schneiders would have known Ms. [D]'s grandmother denied her permission to ride the ATVs. (29:12-20).

> Before riding, Ms. [D] expressed to Shannon Schneider that she had never ridden before and was unsure of how to operate the ATV. (56:14-24). Shannon Schneider then directed Justin Schneider to demonstrate how to operate it; he "lightly showed" her how, then they began riding. (57:1-5). Ms. [D] states she was having difficulty steering the Grizzly 450 when she was riding by herself. (48:23-24, 49:1-4). She did not mention this to Justin Schneider because she assumed it was her fault and that she could correct her mistake. (49:5-9). Moreover, she did not tell Shannon Schneider she was feeling uncomfortable operating the vehicle. (57:15-22). However, during this time she was very fearful she would hit something. (49:10-14).

Further, when Ms. [D] was driving and Amber Sewell was riding as a passenger, she was having extreme difficulty steering the ATV. (51:20-23). During this time, Ms. [D] drove into a thorn bush located on the adjacent property. (51:20-23, 52:1-7). She was not traveling that fast, but she states she held the breaks (sic) as hard as she could. (52:8-14). When she hit the bush, Ms. [D] states it was because she was unsure how to steer correctly, where the breaks (sic) were, and how to stop the ATV. (67:12-18). No one was injured, and it was not reported to Mr. Schneider until after the incident at issue. (52:17-23). Ms. [D] then continued to keep operating the quad, and insisted she do so. (54:4-10, 16-23). She states she did not comprehend the risk of operating the ATV even after crashing into the bush. (45:24, 55:1-9, 17-22). However she did understand if she failed to control the ATV and it hit something, she could be injured. (56:8-13).

{¶ 20} In her deposition, appellant stated she could not recall if she told appellee Shannon Schneider she had called and received permission to ride the ATV. K.D. depo. at 28. Prior to riding the ATV, appellant told appellee Shannon Schneider, "I am not sure just how do you ride this thing; I have never rode this before." *Id.* at 56. She stated appellee Shannon Schneider told her, "[i]t's easy, like, you know, Justin just showed you how to maneuver and stuff, and that's when Justin showed me how - - just like lightly showed me how, and then that's when we rode." *Id.* at 57. Although she claimed to have trouble steering the ATV, she did not tell appellee Justin Schneider because she thought "it was just my fault***I thought I could fix it, I guess, yeah." *Id.* at 49. Appellant observed

appellee Shannon Schneider out in the yard while she was operating the ATV. *Id.* at 57-59, 70. She agreed at all times when appellee Shannon Schneider was outside observing her operating the ATV, "there was nothing to indicate anything other than [her] operating safely and in full control." *Id.* at 71.

{¶ 21} After reviewing all of the submitted statements, the trial court concluded the facts "do not raise a genuine issue as to any material fact relating to whether Defendants' actions were reckless or intentional" and therefore, "reasonable minds can come to only one conclusion that is adverse to the Plaintiff." We concur with the trial court's analysis. We do not find any evidence rising to the level of "reckless" or "intentional" conduct.

NEGLIGENT ENTRUSTMENT

{¶ 22} In *Gulla v. Straus,* 154 Ohio St. 193, 93 N.E.2d 662 (1950), paragraphs three, four, and five of the syllabus, the Supreme Court of Ohio held the following:

3. The owner of a motor vehicle may be held liable for an injury to a third person upon the ground of negligence if the owner knowingly, either through actual knowledge or through knowledge implied from known facts and circumstances, entrusts its operation to an inexperienced or incompetent operator whose negligent operation results in the injury.

4. Where an owner entrusts his motor vehicle to one who must appear to him to be wholly incompetent by reason of mental or physical disability to operate the vehicle, such as being of tender age, mentally deficient, physically deformed or intoxicated, or who for any cause is known to the owner to be an incompetent driver, the responsibility of the owner will

follow the continued operation of the vehicle even though such operation be beyond the scope of permission.

5. In an action against the owner of a motor vehicle for injury arising from its entrustment for operation, the burden is upon the plaintiff to establish that the motor vehicle was driven with the permission and authority of the owner; that the entrustee was in fact an incompetent driver; and that the owner knew at the time of the entrustment that the entrustee had no driver's license, or that he was incompetent or unqualified to operate the vehicle, or had knowledge of such facts and circumstances as would imply knowledge on the part of the owner of such incompetency.

{¶ 23} In her deposition, appellant admitted she was provided with instructions on how to operate the ATV. K.D. depo. at 45, 57. She had been operating the ATV or was a passenger for approximately two to three hours before running into the tree. *Id.* at 51. At one point, appellant ran into a thorn bush because she "couldn't steer right." *Id.* at 51-52. She insisted on continuing to drive because "I thought I could do it again. Like, I thought I could handle it this time." *Id.* at 54. She did not ask Amber or appellee Justin Schneider for additional instructions on how to control and operate the accelerator, brakes, and steering. *Id.* at 67-68. She told them, "I'm going to go fast; I want to see how fast I can go." *Id.* at 69. Appellant admitted before hitting the tree, she was looking down at the speedometer, watching it go from thirty, to forty, and then fifty. *Id.* at 71-72. She saw the tree, but could not stop in time and could not steer around it. *Id.* at 73-75.

{¶ 24} We find, as did the trial court, no evidence was presented to establish that appellees knew appellant was "incompetent or unqualified" to operate the ATV, or "had knowledge of such facts and circumstances as would imply knowledge" on the part of appellees of appellant's incompetence. *Gulla, supra.*

{¶ 25} After reviewing all of the evidence presented for summary judgment purposes, the trial court concluded "there is no genuine issue as to any material fact whether either Defendant, Shannon Schneider or Justin Schneider, negligently entrusted the ATV to Plaintiff in this case." We concur with the trial court's analysis.

{¶ 26} Upon review, we find the trial court did not err in granting summary judgment to appellees.

{¶ 27} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.

By Wise, Earle, J.

Delaney, P.J. and

Wise, John, J. concur.

EEW/sg 407